Hillsborough, } No. 3741.
Nov. 3, 1948. 

ELAINE CHABOT *v.* OTIS SHINER.

*Maurice A. Broderick* (by brief and orally), for the plaintiff.

*Sheehan, Phinney & Bass* (*Mr. Phinney* orally), for the defendant.

BRANCH, C. J.  It was the contention of the plaintiff throughout these proceedings that she intended to sell the property in question subject to the lease and that the defendant intended to purchase the same subject to said lease.  The trial, therefore, turned upon the crucial question of the intention of the defendant when he made the purchase.  It is the present contention of the defendant that "A careful examination of the record fails to disclose the slightest basis for a finding that Shiner intended to take the deed subject to the lease except for the unsupported testimony of Mr. Chabot."  The defendant further argues as follows: "Leaving out of consideration the

testimony of the parties and their respective wife and husband which may fairly be said to be testimony from interested sources, the balance of the evidence clearly shows that not only Shiner, but the Chabots as well, intended to cancel the lease." This argument might well have been addressed to the Trial Court, but carries little weight in this court. The plaintiff's husband testified as follows: "Q. Did Mr. Shiner ever say to you what he was going to do with the lease? A. The only thing he said he wished Mr. Paquin and Mrs. Paquin would keep the lease until it was all done. He didn't want to have it broken up. Q. When did he say that? A. Before he started to buy, a couple of times." Mr. Chabot further testified upon cross-examination as follows, and this is the testimony referred to by the defendant in the defendant's brief above quoted: "Q. And there is no doubt about Mr. Shiner knowing before the sale of the property that the Paquins had a lease? A. Oh, he did sure. Q. And you recall Mr. Shiner telling you before the purchase that he wanted to be boss of the property and that the lease was to be broken? A. No. Q. Would you say that he didn't so tell you? A. He never told me he wanted the lease to be broken. Q. Are you sure of that? A. Yes. Q. What was the talk you had about the lease? A. Well, he asked me how much that lease was and how long and if they would stay after he would buy and I told him I believed they would; they had the lease and he could hold them, and he was glad because he wanted them to keep the lease. Q. And you want to leave it that he never told you he wanted the lease broken and you never told Mr. Shiner that you would fix it up with the Paquins to break the lease? A. No, I never did." The plaintiff also testified as follows: "Q. Now did Mr. Shiner ever say he wouldn't buy the property unless the lease was taken off the property? A. No. He says we can't buy the property. The bank told me you can't buy the property unless you let the lease go ahead of the deed, so he knew it because we had asked our lawyer before."

There is no rule of law which requires that the testimony of the parties be excluded from consideration in a case like the one before us, and the foregoing testimony sustains the conclusion of the Court "that the deed in question fails to express the intention and understanding of the parties at the time of its execution in that it fails to make said conveyance subject to the aforesaid lease from Elaine Chabot to Eva and Philippe Paquin."

Defendant also argues that there was error in the Court's refusal to grant defendant's request No. 12, which was as follows: "12. There

is no indication of fraud, misleading, inequitable or sharp conduct on the part of Otis F. Shiner." In view of the Court's conclusion quoted above in regard to the intention of the parties, the facts set forth in defendant's request No. 12, if found, would be wholly immaterial and the denial of that request was not error.

The same considerations apply to the denial of the defendant's requests Nos. 5 and 6, to the effect that the defendant believed that the lease was to be cancelled and had been cancelled when he received the deed executed by the Chabots. Such findings would have been utterly inconsistent with the general conclusion of the Court and were, of course, properly denied.

At the argument in this court it was contended that the mistake claimed by the plaintiff was not established with sufficient clearness and certainty to authorize a decree of reformation, and reliance was placed on the rule that "to warrant such a decree 'the mistake must be made out in the most clear and decided manner, and to the entire satisfaction of the court; and especially must the proofs be clear and convincing when the mistake is denied in the answer.'" *Searles* v. *Churchill*, 69 N. H. 530, 531. As pointed out in the same case, however, there is no presumption that in the determination of this disputed fact the court has violated elementary rules. On the contrary all the presumptions are in favor of the judgment of the trial court. 3 Am. Jur., Title: Appeal and Error, s. 923. In this case therefore, we must assume that the Court was satisfied that there was a plain mistake clearly made out by satisfactory proof.

*Exceptions overruled.*

All concurred.