Belknap County Probate Court
No. 80-202

*In re* JESSICA B.

April 17, 1981

*Wescott, Millham & Dyer*, of Laconia (*Steven M. Latici* on the brief and *Peter V. Millham* orally), for the guardians.

*Copithorne & Copithorne*, of Laconia (*Martha W. Copithorne* on the brief and orally), for the natural mother, Jodi L.

KING, J. The plaintiffs, Walter and Donna B., brought a petition pursuant to RSA 170-C:5 I seeking to terminate the parental rights of the defendant, Jodi L., formerly Jodi B., over her daughter Jessica B. After a hearing on Februay 21, 1980, the Probate Court (*Burlingame*, J.) ordered the termination of the parental rights of Jodi L., and she appealed. We affirm.

Jodi married Paul B., Jessica's natural father, at the age of seventeen. The couple then resided in Marlborough, Massachusetts. Approximately four months after the marriage, on July 28, 1974, Jodi gave birth to Jessica. The marriage was a troubled one, and in May 1975, Paul filed a libel for divorce and sought custody of Jessica. On May 27, 1975, the Middlesex County Probate Court of Massachusetts ordered Jodi to vacate the marital residence and awarded temporary custody of Jessica to Paul with actual physical custody to be in Paul's parents, who resided in Marlborough.

At about this time, the plaintiffs, who are the brother and sister-in-law of Paul, expressed their desire for the permanent custody of Jessica. The Massachusetts authorities initiated a home study of the plaintiffs as a pre-condition to their obtaining custody of Jessica and placed Jessica in a neutral foster home in Hopkinton, Massachusetts, for the duration of the study. In January 1976, the

plaintiffs obtained custody of Jessica, at the age of eighteen months, and Jessica came to reside with them at their home in Laconia. On February 6, 1976, the Middlesex County Probate Court, with the consent of both natural parents, appointed the plaintiffs the legal guardians of Jessica.

Jodi made visits to Jessica at the home of the plaintiffs in Laconia. On November 13, 1976, Jodi and her new husband, Ken L., removed Jessica from the home of the plaintiffs and attempted to drive off with her in their automobile. The plaintiffs were able to thwart the attempted "child-snatching." On February 17, 1977, Jodi filed a petition for custody and support in the Belknap County Superior Court. The court issued an interim order granting Jodi visitation rights but limited such visitation to the home of the plaintiffs.

From February 21, 1976, to October 1, 1977, Jodi made approximately thirteen visits to Jessica. Her last visit to Jessica was October 1, 1977. After that she never communicated with Jessica, either by telephone or by letter, and sent no birthday cards or gifts of any kind. Furthermore, she changed her residence without informing either her attorney or the plaintiffs where she could be reached.

On October 17, 1977, the plaintiffs filed a petition in the probate court seeking to terminate the parental rights of Jodi and Paul. Paul assented to the termination of his rights. At the February 21, 1980, hearing, the plaintiffs testified that the defendant, Jodi, had no communication with Jessica from October 1, 1977 to that date. Jodi testified that she believed she had visited Jessica in December 1977 but was not sure. All parties agree that she made no visits or other contacts during 1978 or 1979. In the nature of a defense, Jodi testified that there are mitigating circumstances in that she often lacked transportation and a telephone, was often ill and bedridden, and suffered from financial and domestic problems. The probate court rejected these explanations and terminated the parental rights of Jodi over Jessica.

■ The parties dispute the appropriate standard of proof to be applied in termination cases pursuant to RSA ch. 170-C. The defendant asserts that *State v. Robert H.* _____, 118 N.H. 713, 393 A.2d 1387 (1978), requires that the case against the natural parents be established beyond a reasonable doubt. The plaintiffs attempt to distinguish this case from *State v. Robert H.* _____, arguing that proof by clear and convincing evidence is sufficient, but their attempt to do so is unpersuasive. "The role of parents in the life of the family has attained the status of a fundamental

human right and liberty." *State v. Robert H.* _____, *supra* at 715, 393 A.2d at 1388. The rights of parents over their children are "natural, essential, and inherent rights" within the meaning of this State's Constitution. *State v. Robert H.* _____, *supra* at 716, 393 A.2d at 1389; N.H. CONST. pt. I, art. 2. Accordingly, before the termination of parental rights can occur, the State must prove its case under RSA ch. 170-C beyond a reasonable doubt. *In re Diana P.*, 120 N.H. 791, 798, 424 A.2d 178, 182 (1980); *In re Brenda H.*, 119 N.H. 382, 388–89, 402 A.2d 169, 174 (1979); *State v. Robert H.* _____, *supra* at 716, 393 A.2d at 1389.

■ The defendant also asserts that *State v. Robert H.* _____ prohibits the probate court from terminating the parental rights of a natural parent without a finding of specific harm to the child. We disagree. *State v. Robert H.* _____ required that, prior to terminating the parental rights of a natural parent pursuant to RSA 170-C:5 II, III, because of neglect, the probate court must find specific harm to the child from the association between parent and child. *See State v. Robert H.* _____, *supra* at 718, 393 A.2d at 1390. Such a requirement is appropriate in termination proceedings based on neglect because there is a serious danger of intervention to "save" children of low-income parents or minority cultures notwithstanding the love and devotion of the parents. *State v. Robert H.* _____, *supra* at 717, 393 A.2d at 1389–90. We are not convinced, however, that the danger of unnecessary intervention by well-meaning but misguided State agencies is substantial in termination proceedings based on abandonment. Proceedings based on abandonment require proof that the parents have left the child without provision for its identification or left the child in the custody of another without any provision for its support or without communication from the parent. RSA 170-C:5 I. Thus the determination whether to terminate parental rights for abandonment is less subjective than that for neglect.

■ The defendant next argues that the probate court should not have terminated her parental rights because the plaintiffs failed to comply with their alleged duty to make affirmative efforts toward a reunion of the ward and her natural mother. We find no authority, however, imposing an affirmative duty of this kind upon the guardians. *State v. Robert H.* _____ required the State to make an effort to assist the parents in correcting the situation which suggested the need to terminate the parents' rights, but our holding in that case was based on the facts that Robert H. _____ had expressed a strong desire to keep his children, that he was unable to alleviate the conditions which led to the initial finding of neglect,

and on the department of welfare's own regulations promulgated pursuant to RSA 161:4. *State v. Robert H.* _____, *supra* at 718–19, 393 A.2d at 1390–91. None of these facts are present in this case. The plaintiffs are Jessica's legal guardians and not a State agency which is by law charged with a duty to counsel, train, and otherwise assist parents in need of its services. The defendant had not expressed any interest in maintaiing her role as Jessica's parent. We conclude that neither *State v. Robert H.* _____, nor other provisions of our law, impose a duty on individual legal guardians of a ward to work affirmatively toward reuniting the ward with her natural parents.

 Finally, we reject the defendant's argument that the plaintiffs' evidence failed to establish abandonment beyond a reasonable doubt. A parent abandons his child when his conduct "evidences a settled purpose to forego all parental duties and relinquish all parental claims to the child." *Fortino v. Timko*, 110 N.H. 200, 200, 263 A.2d 663, 664 (1970). "Abandonment is not . . . 'an ambulatory thing, the legal effects of which a delinquent parent may dissipate at will by the expression of a desire for the return of the discarded child.' " *Wallace v. Lougee*, 107 N.H. 251, 254, 221 A.2d 780, 783 (1966). RSA 170-C:5 I creates a statutory presumption that a parent who has not communicated for a period of six months with a child in the custody of another intends to abandon that child.

The plaintiffs' evidence indicated that the defendant had made no attempt to communicate with Jessica for a period in excess of two years, despite the fact that for much of that time the defendant lived within thirty miles of the plaintiffs' and Jessica's home. The defendant offers various reasons and excuses for this lack of communication, but the record clearly reflects that the probate court considered these factors and found them insufficient to rebut the evidence of abandonment. We conclude that this evidence is sufficient to establish abandonment beyond a reasonable doubt. A mere "flicker of interest" on the part of a parent will not preclude a finding that the parent has abandoned his child. *In re Diana P.*, 120 N.H. at 799, 424 A.2d at 183. Furthermore, although the probate court did not indicate the standard of proof it applied, in the absence of indications to the contrary, we assume that it applied the appropriate standard in weighing the evidence. *Grabowski v. Grabowski*, 120 N.H. 745, 748, 422 A.2d 1040, 1042 (1980); *Chabot v. Shiner*, 95 N.H. 252, 255, 61 A.2d 791, 793 (1948).

The probate court also considered evidence relating to the best interests of the child, as required by law. *See* RSA 170-C:1; *State v.*

*Robert H.* _____, 118 N.H. at 719, 393 A.2d at 1391. Jessica has not lived with her natural mother since she was nine months old. She is now six years old and has lived with the plaintiffs for the last five years. During this time Jessica has seen the defendant only occasionally and apparently has no meaningful ties with her. The defendant herself agrees that the plaintiffs have provided a good home for Jessica. Considering all of this evidence, we rule that it was proper for the trial court to determine that it was in the best interests of Jessica to terminate the parental rights of the defendant.

*Affirmed.*

All concurred.