Merrimack County Probate Court
No. 91-569

## *In re* SABRINA C.

July 23, 1993

*Law Offices of R. John Roy*, of Manchester (*Barry S. Weinstein and R. John Roy* on the brief, and *Mr. Roy* orally), for the petitioner.

*Tardif, Shapiro & Cassidy*, of Concord (*James M. Cassidy* on the brief and orally), for the respondent.

*Diane Puckhaber*, of Concord, guardian ad litem, filed no brief.

BATCHELDER, J.   The respondent appeals the order of the Merrimack County Probate Court (*Cushing*, J.), terminating her parental rights over her daughter, Sabrina. She argues that the finding of abandonment was unsupported by the evidence; that the probate court did not have authority to rule on the termination petition because of a prior, outstanding visitation order of the superior court; and that the delay between the filing of the termination petition and the termination order violated due process. We affirm.

Sabrina was born on February 7, 1982. Her father, the petitioner, and her mother, the respondent, separated six months later. Sabrina's first three and one-half years of life were, at best, unsettled. She lived at various times with the petitioner, the respondent, and the respondent's parents. In the summer of 1985, the respondent's mother brought Sabrina to live with the petitioner because of Sabrina's exposure through observation to drug abuse in the respondent's household. Since November 1985, the petitioner and his present wife have raised Sabrina.

In late June 1986, the respondent, in anticipation of a planned trip to California, arrived at the petitioner's home, asking to see Sabrina to say goodbye. The respondent did not return to New Hampshire until the middle of August 1987. During this time, the respondent made only one phone call to the petitioner, inquiring about an income tax form and her parents' new address. She did not mention Sabrina. The only written communication with the petitioner was a certified letter dated August 3, 1987, informing him that she was returning from California and wanted to see Sabrina.

The respondent did, however, communicate regularly with her parents during her stay in California. She mentioned Sabrina in three of her letters and spoke with her once on the telephone when Sabrina was visiting the respondent's parents.

In mid-August 1987, a police officer came to the petitioner's home and advised him that the respondent wanted to pick Sabrina up the following night and take her camping. The petitioner called the respondent and requested that she visit with Sabrina in his home instead because the respondent had not seen Sabrina for more than a year. The following night, the respondent arrived with her boyfriend, her brother, and Sabrina's half brother, Shane, insistent upon taking Sabrina camping. A confrontation between the petitioner and the boyfriend caused a neighbor to call the police. Sabrina witnessed this altercation.

On August 25, 1987, the respondent brought a *pro se* action in superior court to enforce her visitation rights. The court granted the respondent scheduled visitation rights at the petitioner's residence. Additionally, when the respondent's mother was present, the respondent was allowed to visit with Sabrina in the neighboring area. Although several visits occurred under the court's order, they were in reality visits between Sabrina and Shane, who enjoy playing together. The record demonstrates that Sabrina did not wish to visit with the respondent.

On September 4, 1987, the petitioner filed a petition for the termination of parental rights, maintaining that the respondent had abandoned Sabrina. *See* RSA 170-C:5, I (1990). The respondent, now represented by counsel, filed a motion to dismiss, asserting that the probate court lacked jurisdiction in the termination action because there was an outstanding visitation order in the superior court. The probate court denied the respondent's motion. Hearings on the termination petition concluded on March 20, 1990. On November 12, 1991, the probate court granted the petition to terminate the respondent's parental rights. This appeal followed.

Because the determination of abandonment is essentially factual, we are not inclined to disturb the probate court's decree unless it is unsupported by the evidence or is plainly erroneous as a matter of law. *In re Lisa H.*, 134 N.H. 188, 191, 589 A.2d 1004, 1005–06 (1991).

The respondent first argues that the probate court's finding of abandonment was unsupported by the evidence. The petitioner counters that the respondent's conduct has evidenced "a settled purpose to forego all parental duties and relinquish all parental claims to the child." *In re Jessica B.*, 121 N.H. 291, 295, 429 A.2d 320, 323 (1981) (quotation omitted).

RSA 170-C:5, I, creates a rebuttable presumption that a parent intends to abandon the child if the parent has left the child in the care and custody of another without provision for the child's sup-

port or without communicating with the child for a period of at least six months. *See In re Jessica B.*, 121 N.H. at 295, 429 A.2d at 323; *see also* Kfoury, *Termination of Parental Rights in New Hampshire*, 23 N.H.B.J. 3, 4–5 (1981). The probate court must consider not only the conduct that occurred during the six-month period alleged in the petition, but also the events before and after that period to determine whether the parent intended to abandon the child. *In re Jessie E.*, 137 N.H. 336, 342, 627 A.2d 591, 595 (1993). "The court should consider the totality of the evidence to determine if the parent intended to abandon the child." *Id.* In making its determination, the probate court considers, among other things, "the frequency and quality of the communication between the parent and child, the emotional and financial support provided by the parent for the child, and whether the overall conduct of the parent evidences a willingness to take on responsibility and concern for the child's physical and emotional care and well-being." *In re Sara S.*, 134 N.H. 590, 593, 593 A.2d 1166, 1168 (1991).

■ Our review of the record reveals ample evidence to support the probate court's ruling. The respondent's contact with Sabrina, particularly since the summer of 1985, has been minimal. She had one phone conversation with Sabrina while living in California and, even though she petitioned the superior court to enforce her visitation rights, meaningful interaction has not resulted. Any visits between the respondent and Sabrina are better characterized as socializing and play sessions shared by Sabrina and Shane.

At no time has the respondent provided financial support for Sabrina. Although the record indicates that, at least at the time of the divorce, the respondent was unable to provide financial support, her financial situation and job stability have improved. Nevertheless, the respondent has made no effort to assist the petitioner and his wife with the expenses of raising a young child.

■ Moreover, there is no evidence that the respondent is willing to provide for Sabrina's emotional and physical well-being. Although the respondent has expressed her desire to now establish a relationship with Sabrina, we note that "abandonment is not an ambulatory thing, the legal effects of which a delinquent parent may dissipate at will by the expression of a desire for the return of the discarded child." *In re Jessica B.*, 121 N.H. at 295, 429 A.2d at 323 (quotations omitted).

After considering all the evidence, the probate court found, beyond a reasonable doubt, that the respondent abandoned Sabrina. We find no error in that determination.

The respondent next argues that the probate court was without authority to hear and decide a termination petition alleging abandonment after the superior court had issued orders regarding visitation. We disagree.

The jurisdiction granted to the superior court regarding divorce and visitation matters under RSA chapter 458 is not only original, but continuing. *See Madsen v. Madsen,* 111 N.H. 315, 315, 282 A.2d 667, 668 (1971). The probate court, however, has exclusive original jurisdiction over petitions to terminate the parent-child relationship. RSA 170-C:3 (1990). Consequently, the jurisdiction of the superior and probate courts is not concurrent in this case. The respondent's argument that "this matter should have been first heard solely in the superior court" has no merit.

The respondent finally argues that the delay between the filing of the termination petition and the probate court's decision constituted a due process infringement upon the fundamental rights of the mother to parent a child. In support of her argument, she cites RSA 170-C:11, V (1990), which states: "The court shall issue a decision which shall include a disposition not later than 60 days after the date of the final hearing."

In *In re Robyn W.,* 124 N.H. 377, 469 A.2d 1351 (1983), we construed RSA 170-C:11, V as requiring that the probate court render its decision on a petition for termination of parental rights within sixty days of the final hearing. *Id.* at 380, 469 A.2d at 1353. We held, however, that the appropriate means of enforcing the sixty-day mandate was not to vacate the termination order. *Id.* at 381, 469 A.2d at 1353. Rather, we stated that the statutory mandate should be treated as one directed to this court in its supervisory role. *Id.* We so held because requiring dismissal of the petition "would penalize the interest of the child." *Id.* We see no reason to depart from our reasoning in *In re Robyn W.*

*Affirmed.*

THAYER, J., did not sit; the others concurred.