Rockingham County Probate Court
No. 96-144

IN RE WILLIAM A.

January 29, 1998

*Chubrich & Harrigan, P.A.*, of Portsmouth (*Michael E. Chubrich* on the brief and orally), for Jennifer A.

*John Tateosian*, of Hampstead, by brief and orally, for Thomas C.

BRODERICK, J. The Rockingham County Probate Court (*O'Neill*, J.) granted the petition of Thomas C. (Thomas) to terminate the parental rights of Jennifer A. (Jennifer) over their son, William A. (William). Jennifer appeals. We reverse.

William was born in Manchester in the early summer of 1991. That fall, his mother, Jennifer, placed him in the care of family friends who lived nearby so she could finish high school. In May 1992, just before graduation, Jennifer, who was then living in Kittery, Maine, resumed custody of her son. In November 1992, she and William moved to Georgia with her mother and stepfather, who were raising their own child, who was just six weeks younger than William.

In February 1993, William's paternal grandfather flew to Georgia to pick him up for a visit in New Hampshire. While William was visiting his grandparents, Jennifer returned to the seacoast area to find an apartment for herself and her son. After a few days, she retrieved William from his grandparents and left him in the care of a friend for the weekend, while she continued to search for a place to live. William's grandfather, however, took him from the friend while Jennifer was away. When Jennifer later sought William's return, his grandparents confronted her, and she reluctantly relinquished her son to their care.

In April 1993, the superior court awarded legal custody of William to Thomas, his natural father, and ordered Jennifer to pay child support. Although she failed to pay the amount required by court order, she periodically sent money to Thomas and gifts to William. She also attempted to communicate with William by letter and visits. Jennifer later gave birth to a second child, with whom William has had contact.

In August 1994, Thomas petitioned the probate court to terminate Jennifer's parental rights to William on the grounds of abandonment and nonsupport. *See* RSA 170-C:4, I, :5, I, II (1994). At the hearing, Thomas' wife, Lyne, testified that she favored termination so that she could adopt William; however, she expressed a willingness to permit visitation between William and Jennifer and testified that she believed that the child had a right to know about his mother. Thomas indicated that he, too, would be willing to allow Jennifer continued visitation with William, provided that the visits occurred at his home. William's guardian ad litem (GAL) recommended that Jennifer's parental rights not be terminated and testified that Jennifer conditionally agreed to Lyne's appointment as William's guardian. The probate court found that Jennifer had abandoned William and failed to support him. *See* RSA 170-C:5, I, II. It also determined that it was in William's best interests to terminate her parental rights.

"We will not disturb the probate court's decree unless it is unsupported by the evidence or plainly erroneous as a matter of law." *In re Angel N.*, 141 N.H. 158, 161, 679 A.2d 1136, 1138 (1996); *see* RSA 567-A:4 (1997). On appeal, Jennifer argues that the evidence was insufficient to support the court's ruling that William's best interests were served by termination of her parental rights. We agree.

■ Our legislature has declared that "whenever possible family life should be strengthened and preserved." RSA 170-C:1 (1994); *see State v. Robert H.*, 118 N.H. 713, 715, 393 A.2d 1387, 1389 (1978) (holding that "family and the rights of parents over it" are fundamental and within N.H. CONST. pt. I, art. 2). We place a greater emphasis than do many other States on preserving family relationships. *Compare Santosky v. Kramer*, 455 U.S. 745, 769 (1982) (holding under New York law that clear-and-convincing evidence standard is necessary to terminate parental rights) *with In re Taryn D.*, 141 N.H. 376, 378, 684 A.2d 63, 64 (1996) (requiring proof beyond a reasonable doubt to terminate parental rights). To terminate the relationship between parent and child, a petitioner

must not only prove a statutory ground for termination beyond a reasonable doubt, *see In re Jessie E.*, 137 N.H. 336, 339, 627 A.2d 591, 593 (1993); RSA 170-C:5 (1994), but also that termination of parental rights is in the best interests of the child. *In re Matthew G.*, 124 N.H. 414, 416, 469 A.2d 1365, 1366-67 (1983).

█ In this case, the probate court erred in concluding that termination of Jennifer's parental rights was in William's best interests. In reaching its conclusion, the probate court observed that Jennifer "was continuously giving the child to other persons for long periods of time to care for, which resulted in the child being constantly shuffled from home to home." The probate court concluded that William, who apparently had grown to recognize Lyne as his mother, should remain with his father and stepmother with "no possibility of returning to the lifestyle he experienced" while in Jennifer's care.

Although keeping William in a stable environment is certainly consistent with his best interests, *see In re Diana P.*, 120 N.H. 791, 797, 424 A.2d 178, 181 (1980), *cert. denied*, 452 U.S. 964 (1981), there is no evidence to suggest that this could not be accomplished without terminating Jennifer's parental rights. Legal custody of William had been awarded to Thomas, who also enjoyed physical custody of his son. Unlike situations where failure to terminate parental rights would leave a child adrift in the foster care system, William was to remain at home with his father and stepmother, absent further court order. *Cf. In re Lisa H.*, 134 N.H. 188, 193, 589 A.2d 1004, 1007 (1991) (reasoning best interests favored termination where foster parents sought adoption and child had lived with them for two years and progressed during that time). Accordingly, termination of Jennifer's parental rights was not necessary to ensure William's stable and secure environment. *Cf. Robert H.*, 118 N.H. at 718, 393 A.2d at 1391 (imperfect parenting, particularly when caused by poverty, is insufficient basis for termination).

█ The record does not reflect any effort by Jennifer to reacquire legal or physical custody of her son. She merely wanted the right to visit him. The GAL testified that such visitation was consistent with William's best interests, and the stepmother supported this view. *Cf. In re Angel N.*, 141 N.H. at 163, 679 A.2d at 1139 (only mother's therapist testified that mother and child reunion was a reasonable possibility). Furthermore, the evidence suggests that Jennifer had enhanced her ability to have a positive and supportive relationship with William. *Cf. id.* at 164, 679 A.2d at 1140 (termination in best interests where foster parents, who intended to

adopt child, had ability to meet child's special needs); *In re Sabrina C.*, 137 N.H. 445, 448, 629 A.2d 782, 784 (1993) (lack of evidence of parent's willingness to provide for child's emotional and physical well-being supported termination). At the time the termination hearing commenced, in October 1995, Jennifer was enrolled in a parenting class and furthering her education in other areas. She was also raising William's half-brother, which, according to the GAL, would improve her parenting skills.

■ The GAL acknowledged that despite William's recognition of Lyne as his mother, the loss of contact with his natural mother could, in the long term, cause greater harm to the child than temporary confusion over maternal identity. *Cf. In re Lisa H.*, 134 N.H. at 193, 589 A.2d at 1007 (child's identification of foster parents as "mom" and "dad" considered in conjunction with other factors). Moreover, William's relationship with his stepmother was not at risk if Jennifer's parental rights were not terminated. In fact, Jennifer consented to Lyne's appointment as William's legal guardian. *See generally* RSA 463:5 (Supp. 1997); *In re Jessie E.*, 137 N.H. at 340, 627 A.2d at 593 (granting of guardianship to person other than parent does not terminate parental rights).

It cannot be disputed that termination of a parent's legal bond to a child is a solemn and irreversible event. While termination is sometimes required to protect a child's best interests, this is not such a case. Consequently, the probate court's finding that termination was necessary is error.

*Reversed.*

All concurred.