Henniker Family Division
No. 2010-169

## IN RE JACK L.

Argued: January 13, 2011
Opinion Issued: March 16, 2011

*Michael A. Delaney*, attorney general (*Laura E. B. Lombardi*, assistant attorney general, on the memorandum of law and orally), for the petitioner, New Hampshire Division for Children, Youth and Families.

*Courteous Law, PLLC*, of Henniker (*Deb Bess Urbaitis* on the brief and orally), for respondent father.

*Prevett & Prevett, LLP*, of Amherst (*Todd H. Prevett* on the brief and orally), for respondent mother.

LYNN, J. The respondents, mother and father, appeal an order of the Henniker Family Division (*Scheffy*, J.) terminating their parental rights over their son, Jack L., on the grounds of abandonment. *See* RSA 170-C:5, I (2002); RSA 170-C:15 (2002). We affirm.

## I

The record supports the following. Jack L. was born in February 1999 to the respondents. In January 2004, based on certain aspects of the mother's treatment of the child, the Coos County Probate Court granted, with the consent of the parents, a guardianship over the child to his paternal grandmother.

Three years later, the division for children, youth and families (DCYF) filed a petition against the grandmother in the Hillsborough District Court, pursuant to RSA chapter 169-C (2002 & Supp. 2010), alleging that she had neglected Jack L., based on an inability to provide proper supervision for, or maintain the safety of, Jack L. and his sister in the home. In connection with this proceeding, the court appointed a guardian ad litem (GAL) for Jack L. At a preliminary hearing in July 2007, both parents were present. Stating that "the children's natural parents . . . are at risk of losing their parental rights as a result of this petition," the District Court (*Barry*, J.) also appointed counsel to represent them individually. In August, psychological evaluations of both parents were conducted. In September, both parents left New Hampshire and moved to the State of Washington.

Following an adjudicatory hearing scheduled for August 8, *see* RSA 169-C:18 (2002), a dispositional hearing was held on November 14, 2007. By that time, the case had been transferred to the Henniker Family Division. The Henniker Family Division found that the grandmother had neglected Jack L. and awarded legal custody of the child to DCYF. Although the parents had been sent notice of the dispositional hearing, they remained out of state and did not attend.

In March 2008, a three-month review hearing was held. Again, the parents were sent notice of the review hearing, but did not attend. By that time, the parents had moved from Washington, but had not provided DCYF with a new address. In April, the father contacted DCYF, as he "was in the area" and wanted to see his daughter and Jack L. DCYF informed the father that he would need to see the children's therapist before any such visit could occur. The father met with his daughter's therapist once, and had one unauthorized contact with Jack L.

In June 2008, a six-month review hearing was held; DCYF still had no address or telephone number for either of the parents. In August, a DCYF child protection service worker (CPSW) learned from the grandmother that the parents were living in Arkansas. Subsequent to the nine-month review hearing, from which the parents were again absent, the family division ordered the parents to appear for the next review hearing. In October, the grandmother gave the CPSW a specific address for the father in Searcy, Arkansas. Finally, in December, an investigator at the attorney general's office called the CPSW and told her that the father and

grandmother had met with him, and that the father was living in the area. There was not, however, a specific address or telephone number provided for locating the father.

On December 18, 2008, DCYF filed termination of parental rights (TPR) petitions against both parents on the grounds that they had abandoned Jack L. The parents unsuccessfully moved to dismiss the petitions, arguing, among other things, that their rights under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 *et seq.* (2006), were violated because guardians were not provided for them in the underlying neglect proceedings. Subsequent to a hearing, at which both parents appeared with counsel, their parental rights were terminated on February 10, 2010. This appeal followed.

## II

■ ■ Parental rights are "natural, essential, and inherent" within the meaning of Part I, Article 2 of the New Hampshire Constitution. *In re Adam R.*, 159 N.H. 788, 792 (2010) (quotation omitted). Nevertheless, the fundamental rights of parents are not unassailable, and terminations of parental rights will be upheld if applicable due process requirements have been met. *Id.* The dominant consideration in termination proceedings under RSA chapter 170-C (2002 & Supp. 2010) is the welfare of the child, which prevails over the interests of the parents. *Adam R.*, 159 N.H. at 792. Before a court may order the termination of parental rights, the petitioning party must prove a statutory ground for termination beyond a reasonable doubt. *Id.*; *see In re Zachary G.*, 159 N.H. 146, 153 (2009) (family division); RSA 170-C:5; *see also* RSA 490-D:14 (2010) (statutory references to probate courts include the judicial branch family division). If a statutory ground is established, the court must then consider whether termination is in the child's best interest. *Adam R.*, 159 N.H. at 792. The assessment of a child's best interest is not an evidentiary fact, however, and need not be established "beyond a reasonable doubt." *Id.* (quotation omitted).

The trial court, as the trier of fact, is in the best position to assess and weigh the evidence before it. *Id.* It has the benefit of observing the parties and their witnesses. *Id.* We will not disturb the family division's finding unless it is unsupported by the evidence or plainly erroneous as a matter of law. *Zachary G.*, 159 N.H. at 153; *see Adam R.*, 159 N.H. at 792.

Although the parents have filed co-appeals and individual briefs, their allegations of family division error are virtually identical. Specifically, they argue that the family division erred "as a matter of law" in: (1) "den[ying] [their] Motion to Dismiss based on the failure of [DCYF] to appoint a Guardian for [them] under the [ADA] in the underlying Abuse/Neglect matter"; and (2) "reject[ing their] argument that [their] relationship with

[the grandmother] constituted an agency and that said agency precluded a finding of abandonment under [RSA 170-C:5, I], where [the grandmother] inquired about [Jack L.'s] welfare on [their] behalf . . . ." We address each of the parents' arguments in turn below.

### III

The parents first contend that the family division should have dismissed the TPR petition based on the fact that they were not provided with GALs or guardians in the original neglect proceedings against the grandmother. We note that at various points in their filings and arguments before this court, the parents appear to have used the terms "guardian" and "guardian ad litem" interchangeably. In the absence of any suggestion to the contrary by either parent, we assume that, however characterized, what the parents claim was required was the appointment for each of them of a suitable person (besides appointed counsel) to represent his or her interests *in the neglect proceedings.* Neither parent suggests that he or she required the appointment of a guardian of the person for all purposes.

DCYF argues that the parents failed to preserve this issue, as they neither raised it during the neglect proceedings, nor appealed the family division's finding of neglect. We agree that, insofar as the parents seek to attack the neglect proceedings directly, by predicating error on a failure to provide GALs or guardians for them in that case, the issue is not preserved for our appellate review. The record does not reflect that either the parents or their attorneys ever requested the appointment of GALs or guardians to represent them in the neglect case, or objected — on ADA grounds or otherwise — to a failure to provide GALs or guardians. Nor did the parents appeal the neglect case to the superior court pursuant to RSA 169-C:28, a prerequisite to bringing the case before this court. As such, the issue is not preserved.

In contrast, insofar as the parents argue that the family division erred by not allowing them, in effect, to collaterally attack a failure to provide GALs or guardians for them in the neglect proceedings as a basis to dismiss the TPR petitions, we find that this issue was preserved for appellate review. This allegation of error arises from the family division's June 10, 2009 denial of the parents' motions to dismiss the TPR petitions, not the November 2007 finding of neglect against the grandmother. The record indicates that the parents' arguments concerning a failure to provide GALs or guardians under the ADA in the neglect case were raised by the mother in her March 4, 2009 motion to dismiss the TPR petition and her supporting memorandum of law, and by the father on the same date in his addendum to his motion to dismiss the TPR petition. The record is also clear that the family division was aware of, and considered, the parents' ADA arguments

when denying their motions to dismiss. The parents' appeal of the family division's February 10, 2010 order terminating their parental rights was timely filed on March 17, 2010. Thus, this issue is properly before us.

■ Although the argument that the TPR proceeding should have been dismissed because the parents were not provided with GALs or guardians in the neglect proceeding is properly preserved, we find the argument lacking in merit. The finding of neglect was made against the grandmother, not against the parents, and, as already noted, the parents did not appeal the dispositional order in the neglect case to superior court, as was their right. *See* RSA 169-C:28, I (appeal may be taken to superior court by child, child's authorized representative, "or any party having an interest"). The parents do not argue that had they been provided with GALs or guardians in the neglect proceeding, the court would not have found neglect on the part of the grandmother. Nor do they argue that had they been provided with GALs or guardians in the neglect proceeding, the court would not have terminated their parental rights. Even if we were to assume that DCYF or the court had a duty under the ADA to provide for GALs or guardians for the parents in the underlying neglect case, we fail to see a nexus between any such failure to do so and the termination of their parental rights. Here, the parents contend that GALs or guardians should have been appointed to assist them in complying with the court order in the underlying neglect proceedings. However, with regard to the parents, that order was limited to requiring them to comply with the recommendations set forth in their individual psychological evaluations *in the event they returned to New Hampshire and desired to become involved in their son's life.* As the court stated in denying the parents' motions to dismiss: "Had [the parents] had contact with the court or their attorneys, there might have been provisions made for re-entry into their children's lives." But because neither parent ever manifested in any meaningful way a desire to resume parental responsibilities for Jack L., the condition precedent for compliance with this aspect of the dispositional order in the neglect case was never satisfied, and thus in neither parent's case did a failure to follow the recommendations set forth in the individual psychological evaluations form the basis for the TPR proceeding. Rather, the TPR petitions alleged that both parents had abandoned Jack L.

In short, whether GALs or guardians should have been provided to the parents in the neglect case is irrelevant to the TPR action. Therefore, we find no error in the family division's denial of the parents' motions to dismiss the TPR case on these grounds.

## IV

The parents next contend that the family division erred in rejecting their argument that their relationship with the grandmother constituted an "agency relationship" that precluded a finding of abandonment under RSA 170-C:5, I, because the grandmother inquired about Jack L.'s welfare on their behalf. The parents acknowledge that they know of no authority that directly applies the principles of agency law to TPR proceedings. The family division rejected the argument, stating: "It is a novel theory but I cannot accept it as a reasonable substitute for actual parenting or as a defense to the petitions."

We need not decide whether an agency theory can ever be successfully asserted as a defense to a TPR proceeding alleging abandonment. What is clear, however, is that no such defense is available to the parents in this case given the factual circumstances presented here.

The December 2008 TPR petitions alleged that both the father and the mother had abandoned Jack L., in that neither parent had contact with the child since August 25, 2007, a period well in excess of six months. *See* RSA 170-C:5, I (presumption of abandonment arises where parent has left child in care and custody of another without communication from parent for a period of six months). By November 2007, the family division had already made a finding of neglect against the grandmother. The grandmother no longer had legal custody of Jack L. and was not responsible for his care, as legal custody had been awarded to DCYF. Instead of attempting to become responsible for their child to whatever extent possible, the parents left the child, and the grandmother, by moving out of state.

Moreover, the record contains ample evidence that, subsequent to their relocation from New Hampshire, the mother made virtually no efforts, and the father made no more than minimal efforts, to communicate or have contact with Jack L. *See id.* ("If in the opinion of the court the evidence indicates that such parent has made only minimal efforts to support or communicate with the child, the court may declare the child to be abandoned."). As the trial court observed:

> I am left to guess what the [parents'] intentions were but their actions made it clear that [Jack L.] was not sufficiently a priority in their lives that they did anything to provide for his emotional or financial welfare. The fact that this went on for a period in excess of six months satisfies the statutory requirements to form a rebuttable presumption [of abandonment]; the fact that it went on

for the vast majority of [Jack L.'s] life sustains the presumption. The [parents] chose not to take "the opportunity to rebut the intention to abandon."

We agree with the above assessment and reiterate what we stated in *In re Thomas M.*, 141 N.H. 55 (1996):

> Parental responsibilities come in many forms, and some, we presume, may be discharged by delegation. Others require the active involvement of the child's parent, guardian, or custodian. Caring for a child's emotional well-being falls under the latter category. No doubt fulfillment of this obligation co-exists with periodic substitute care while the adult is temporarily separated from the child. But a parent, guardian, or custodian cannot pretend to discharge this responsibility during an extended absence without some contact with the children in his or her care.

*Thomas M.*, 141 N.H. at 58-59 (citation, quotation, and brackets omitted); *see also In re Jessie E.*, 137 N.H. 336, 342-43 (1993) (a mere flicker of interest is not sufficient to rebut the presumption of abandonment).

The parents have appealed only the family division's finding of abandonment under RSA 170-C:5, I. They have not appealed the family division's finding that termination of their parental rights was in the best interest of Jack L. Therefore, we need not address the latter finding.

*Affirmed.*

DALIANIS, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.