6th Circuit Court — Franklin Family Division
No. 2012-735

IN RE FAITH T. & a.

Argued: September 19, 2013
Opinion Issued: October 16, 2013

Barbara and George G., self-represented petitioners, by brief.

*Goldman & LeBrun, P.A.*, of Concord (*John P. LeBrun* on the memorandum of law and orally), for the respondent.

*Joseph A. Foster*, attorney general (*Suzanne M. Gorman*, senior assistant attorney general, on the memorandum of law, and *Stephen G. LaBonte*, assistant attorney general, orally), for the State of New Hampshire, as amicus curiae.

DALIANIS, C.J. The petitioners, Barbara and George G., appeal an order of the 6th Circuit Court — Franklin Family Division (*Gordon*, J.), denying their petitions to terminate the parental rights of the mother, Amelia T., over her three children, Faith T., Arom T., and Jacoby T. They argue that the trial court erred in: (1) concluding that they failed to prove beyond a reasonable doubt that the mother substantially and continuously neglected to pay for necessary subsistence, education, or other care; (2) failing to balance the best interest of the children and the totality of the circumstances; and (3) dismissing their petitions under RSA chapter 169-C (2002 & Supp. 2012). We affirm.

The record supports, or the trial court found, the following facts. Faith was born July 31, 2004, when Amelia was sixteen years old and still in high school. Faith has known the petitioners for most of her life and has lived with them continuously since November 2007. Arom and Jacoby, who are twins, were born January 28, 2008, and, except for a two-week period in May 2008, have lived with the petitioners since they were born.

In June 2008, when Amelia was facing the possibility of proceedings being initiated by the New Hampshire Division for Children, Youth and Families (DCYF) regarding her care of the children, the petitioners, who are not related to Amelia, agreed to become temporary guardians of the three children. They were appointed permanent guardians on September 9, 2009. During the guardianship, the children have been well cared for and, in all respects, consider the petitioners as their parents.

Amelia is currently employed at a department store, where she works between thirty-two and forty hours per week. She pays child support according to the guidelines based upon her income; the child support amount is automatically deducted from her paycheck by wage assignment. *See* RSA 458-C:3 (2004 & Supp. 2012). She has supervised visits with the children at a visitation center, and she telephones Faith each week. Otherwise, she has little involvement with the children.

The petitioners filed petitions to terminate Amelia's parental rights over all three children, noting their intent to adopt them if the petitions were granted. The petitions alleged two statutory grounds for termination: (1) that Amelia had failed to support, educate, or care for the children as defined in RSA 170-C:5, II (2002); and (2) that she had failed to correct conditions of neglect or abuse under RSA chapter 169-C as defined in RSA 170-C:5, III (2002).

Prior to the final hearing, the court determined that Amelia was never subject to a finding of abuse or neglect pursuant to RSA chapter 169-C and, accordingly, that the second ground for termination did not apply. Consequently, the hearing proceeded on the single ground that Amelia failed to pay for necessary subsistence, education, or other care for all three children. Following the two-day final hearing, the trial court concluded that the petitioners failed to meet their burden to prove beyond a reasonable doubt that Amelia had substantially and continuously neglected to pay for necessary subsistence, education, or other care and, accordingly, denied the petitions. This appeal followed.

The petitioners first argue that the trial court's decision is unsupported by the evidence and is contrary to the judge's findings. In support of this contention, they offer a lengthy list of what they apparently consider to be Amelia's shortcomings as a parent.

■ Before the court may order the termination of a parent's rights, the petitioning party must prove a statutory ground for termination beyond a reasonable doubt. *In re Haley K.*, 163 N.H. 247, 249 (2012). We will affirm the trial court's order unless it is unsupported by the evidence or erroneous as a matter of law. *Id.*

■ Here, the statutory ground for termination is set forth in RSA 170-C:5, II, which permits termination when the petitioning party has proven, beyond a reasonable doubt, that

> *although the parent[ ] [is] financially able,* [she has] substantially and continuously neglected to provide the child with necessary subsistence, education or other care necessary for his mental, emotional, or physical health or [has] *substantially and continuously neglected to pay for such subsistence, education or other care when legal custody is lodged with others.*

(Emphases added.). Because the petitioners are the children's permanent guardians, "legal custody is lodged with others." The State, as *amicus curiae*, argues that the requirement in the first half of the statute that the parent provide for the child's "mental, emotional, or physical health" applies when, as here, "legal custody is lodged with others." We disagree. Under this statute, if Amelia is "financially able," she is required only to *pay* for subsistence, education, or other care. The provision for and management of such care necessary for the children's "mental, emotional, or physical health" is the province of those in whom legal custody is lodged.

■ Here, the trial court implicitly found that Amelia has paid the amount for which she is "financially able." The evidence supports this implicit finding. In the guardianship proceeding, Amelia was initially ordered to pay

$11.00 a week as support for the children. *See* RSA 463:13, I (2004) (authorizing court, when guardian has been appointed over the person or estate of child, to order parent "to contribute to the support and maintenance of the minor in such amounts and at such times as the court determines to be just and reasonable"). When Amelia began working additional hours at her employment, the court increased her payment to $68.00 per week. *See* RSA 463:13, II (2004) (permitting court to revise support order "as the circumstances of the party or parties having the duty to support and maintain or the benefit of the minor may require"). The trial court found, and the record demonstrates, that Amelia consistently meets this financial obligation. By increasing Amelia's support obligation, the court determined that $68.00 per week was what she was "financially able" to pay. The issue here is not whether $68.00 per week is sufficient to provide the subsistence, education or other care "necessary for [the] mental, emotional, or physical health" of three young children. Rather, the issue is whether Amelia is "financially able" to do more. There was no evidence that Amelia could afford to pay more in child support than was ordered. Accordingly, the petitioners did not prove beyond a reasonable doubt that this ground for termination had been met.

■ The petitioners next assert that the dominant consideration of the court in termination proceedings is the welfare of the child. We do not disagree. *See, e.g., In re Jack L.*, 161 N.H. 611, 614 (2011) (noting "dominant consideration in termination proceedings . . . is the welfare of the child, which prevails over the interests of the parents"). However, before a welfare-of-the-child analysis can be undertaken by the court, the petitioners must prove a statutory ground for termination beyond a reasonable doubt. *Id.* "If a statutory ground is established, the court must then consider whether termination is in the child's best interest." *Id.* Here, the petitioners failed to prove a statutory ground and, therefore, whether termination was in the best interest of the children was not an issue before the trial court.

■ Finally, the petitioners argue that the trial court erred in dismissing the termination ground based upon their allegation that Amelia failed to correct the conditions leading to a finding of child neglect or abuse under RSA chapter 169-C. A petition for termination of parental rights may be granted if the petitioner proves beyond a reasonable doubt that "[t]he parent[ ], subsequent to a finding of child neglect or abuse under RSA [chapter] 169-C, [has] failed to correct the conditions leading to such a finding within 12 months of the finding despite reasonable efforts under the direction of the [circuit] court to rectify the conditions." RSA 170-C:5, III. As the trial court correctly noted, however, DCYF never filed a petition for

abuse or neglect against Amelia pursuant to RSA chapter 169-C. Accordingly, the trial court did not err in dismissing the petitions based upon this ground.

New Hampshire places a greater emphasis than do many other States on preserving family relationships. *In re William A.*, 142 N.H. 598, 600 (1998). And we have underscored that imperfect parenting, particularly when caused by lack of financial means, is an insufficient basis for terminating a parent's parental rights. *See State v. Robert H.*, 118 N.H. 713, 718 (1978), *overruled on other grounds by In re Craig T.*, 147 N.H. 739 (2002). We conclude that the trial court did not err in denying the termination petitions.

*Affirmed.*

HICKS, CONBOY, LYNN and BASSETT, JJ., concurred.