Hillsborough County Probate Court
No. 93-603

*In re* SHEENA B.

December 9, 1994

*Goldsmith & Landry,* of Nashua (*Barbara Burnes Landry* on the brief and orally), for the petitioner, Tammy B.

*Fernald, Taft, Falby & Little, P.A.,* of Peterborough (*Mark D. Fernald* on the brief and orally), for the respondent, Maurice B.

BROCK, C.J.  The respondent, Maurice B., appeals the order of the Hillsborough County Probate Court (*Cloutier,* J.) terminating his parental rights over his daughter, Sheena, on the grounds of abandonment pursuant to RSA 170-C:5, I (1994). On appeal, the respondent essentially contends that the trial court's finding of abandonment was unsupported by the evidence and that the trial court erred when it terminated his parental rights when an adoption was not contemplated. We reverse.

Sheena was born on August 27, 1986. Her mother, the petitioner, and her father, the respondent, were never married, but lived together from March 1986 until October 1987, when the petitioner moved out with the child. For approximately two months after they separated, the respondent was allowed to visit Sheena. The petitioner subsequently refused to allow the respondent to visit Sheena. The respondent had no contact with the child from December 1987 through July 1989. After allowing visitation and accepting child support payments from August 1989 through August 1990, the petitioner again denied visitation and refused child support.

The respondent filed a petition in the superior court in December 1992 seeking visitation with Sheena. The petitioner subsequently filed a petition seeking the termination of the respondent's parental rights in the probate court in March 1993. Further proceedings on the visitation petition were suspended pending the outcome of the petition for termination of parental rights. After a hearing, the probate court terminated the respondent's parental rights based on a finding of abandonment under RSA 170-C:5, I. This appeal followed.

■ Because parental rights are fundamental under the New Hampshire Constitution, we have held that the party seeking to terminate parental rights "must prove the statutory ground for termination beyond a reasonable doubt." *Stanley D. v. Deborah D.,* 124 N.H. 138, 142, 467 A.2d 249, 251 (1983); *see* N.H. CONST. pt. I, art. 2. After one of the statutory grounds for terminating a party's parental rights has been satisfied, *see* RSA 170-C:5, "the court must consider whether it is in the child's best interest to terminate the rights of the parent in question." *In re Matthew G.,* 124 N.H. 414, 416, 469 A.2d 1365, 1366–67 (1983).

■ A determination of abandonment is essentially factual, *id.*, and is statutorily delegated to the probate court, *In re Lisa H.,* 134 N.H. 188, 191, 589 A.2d 1004, 1006 (1991). We will not disturb the probate court's decree unless it is unsupported by the evidence or plainly erroneous as a matter of law. *Id.*

■■ RSA 170-C:5, I, "creates a rebuttable presumption that a parent intends to abandon [a] child if the parent has left the child in the care and custody of another without provision for the child's support or without communicating with the child for a period of at least six months." *In re Jessie E.,* 137 N.H. 336, 342, 627 A.2d 591, 595 (1993). A finding of abandonment is warranted when the parent's conduct "evidences a settled purpose to forego all parental duties and relinquish all parental claims to the child." *Fortino v. Timko,* 110 N.H. 200, 200, 263 A.2d 663, 664 (1970) (quotation omitted). The six-month period of time during which there is no contact or support by the parent may trigger a finding of abandonment, but it does not mandate that finding. *In re Jessie E.,* 137 N.H. at 342, 627 A.2d at 595. In the present case, the petitioner has shown that the respondent had no contact with Sheena for a period of six months, thereby creating a presumption that he intended to abandon the child. *See* RSA 170-C:5, I.

■ To determine whether the respondent has rebutted the presumption of an intent to abandon, the probate court must consider events before, during, and after the triggering period. *See In re Jessie E.,* 137 N.H. at 342, 627 A.2d at 595. The presumption of abandonment will not be rebutted upon a showing of a "mere flicker of interest." *In re Jessica B.,* 121 N.H. 291, 295, 429 A.2d 320, 323 (1981) (quotation omitted). The statute does not require the probate court to find that a parent *sought* to abandon the child before it may terminate parental rights; the court may declare the child abandoned if it finds that the parent has made "only minimal efforts to support or communicate with the child." RSA 170-C:5, I.

When the petitioner and respondent first separated, the petitioner allowed the respondent visitation with Sheena. During part of the time that the respondent had no contact with Sheena, he was either in Florida, seeking work, or incarcerated. Upon returning from Florida, the respondent contacted the petitioner to arrange visits with Sheena. The respondent offered to pay child support to the petitioner if visits were allowed, but this offer was declined.

In April 1989, the petitioner filed a petition with the probate court seeking to change Sheena's last name from the respondent's to her own. The respondent walked seven miles to attend the

hearing in May 1989, but arrived late, after the petition was granted. At a second hearing on the name change, the original order was affirmed, and the probate court urged the respondent to pay child support and live up to his parental responsibilities. After this hearing, the respondent began paying child support to the petitioner.

The respondent made between ten and fifteen child support payments from July 1989 through February 1991, and was allowed visitation with Sheena from November 1989 through August 1990. After August 1990, the petitioner declined to permit the respondent visitation with Sheena. In early 1991, the petitioner refused any further child support payments from the respondent, returning all checks uncashed, and in May 1991, the petitioner sought a restraining order from the district court, claiming that the respondent was harassing her by making threatening telephone calls to her at work and at home. This petition was dismissed later in the same month because both parties failed to appear in court. In September 1991, the petitioner and Sheena moved in with another man and did not give the respondent the address or telephone number.

In September 1992, shortly after the respondent located the petitioner and sent a letter and child support check to the petitioner at her place of employment, she filed for a restraining order in the district court, again claiming harassment. Specifically, the petitioner stated that she was in immediate and present danger of abuse by the defendant because

I have had [three] previous restraining orders because of abuse [and] threats in the past. He is not threatening me now but is harassing me by contacting me at work ([three] weeks ago) [and] contacting my father (last week . . .) trying to get my address. I have asked him many times not to call me or my family but he continues. I don't trust him [and] I will always be afraid of him.

The respondent stated at the hearing that the "harassment" consisted of his sending a letter and child support check to the petitioner at her place of employment. At trial, the petitioner recounted the substance of a telephone call made by the respondent to her at her place of employment, testifying that he said

that he had stopped using drugs and now he wanted to start a relationship with Sheena . . . and I denied him that and I said if you want to see her and you feel like you deserve it, then you can do that through the Court but I

was told that before—very shortly before he was in jail—that he was still using cocaine and still using alcohol and I didn't feel that he had made any attempts to become a responsible person and by now I just felt that it had been too long. Sheena didn't know him. She didn't want to see him. And I asked him not to call me at work and he continued to call and then began getting angry and harassing me. So that's why I went for the restraining order.

Within weeks after the restraining order was issued, the respondent contacted an attorney to seek a means to gain visitation with his daughter. He subsequently filed a petition in the superior court seeking visitation.

We must consider the totality of evidence to determine whether the respondent intended to abandon Sheena. *In re Jessie E.,* 137 N.H. at 342, 627 A.2d at 595. The evidence is undisputed that the respondent has a history of problems with the law. In addition, on several occasions, the respondent behaved in a violent manner toward the petitioner in the presence of Sheena. Each of these acts, however, took place before 1989.

The petitioner contends that her decision to refuse visitation and child support from the respondent in 1990 derived from her concern for "Sheena's own safety." She further stated that she felt that Sheena "wasn't in a safe environment, physically or emotionally," and that the respondent had never "made real attempts at being a parent. His attempts have been off and on." The probate court in this case agreed, finding that the petitioner had "lost all trust in" the respondent and that she was "justifiably frightened of him and [was] concerned for her safety and that of the child." The following exchange between the respondent's counsel and the petitioner is illustrative:

Counsel: How would you expect [the respondent] to ask for visits with Sheena if you told him never to contact you again?

Petitioner: I don't know.

Counsel: Isn't it true that you really just wanted him out of your life?

Petitioner: Yup.

Counsel: And you wanted him out of Sheena's life?

Petitioner: Right.

In his request for findings of fact and rulings of law, the respondent requested the following finding:

> When a mother with custody of a child denies the father visitation, refuses to accept his child support payments, and moves without giving the father her new address and phone number, and where the father repeatedly attempts to contact the mother through her place of employment for purposes of paying child support and seeking visitation with the child, there has been no abandonment within the meaning of RSA 170-C:5 I.

This request was denied. We disagree.

██ ██ Strictly speaking, there is no abandonment by a parent where the separation of parent and child is caused solely by the other parent or a third party and because of no fault on the part of the parent whose rights are sought to be terminated. "Fault" in this context would include the absence of efforts to reinitiate contact on the part of the parent whose rights are sought to be terminated. It would be illogical to find that the respondent demonstrated an intent to abandon Sheena when, for a significant portion of the relevant time period, he was prohibited by law from contacting her. On the other hand, we are troubled insofar as these "involuntary" separations—enforced by restraining orders or created by the petitioner's relocating without leaving a forwarding address—were in response to the respondent's prior improper conduct.

In *State v. Doe,* 117 N.H. 562, 374 A.2d 1186 (1977), we stated that

> a finding of abandonment is not precluded merely because the initial separation of the [parent] and child resulted from a court order and against the will of the [parent]. That, of course, is a factor to be considered on the question, but subsequent conduct on the part of the parent thereafter may be found to constitute abandonment.

*Id.* at 563, 374 A.2d at 1187. Further, "[a]bandonment is not . . . an ambulatory thing, the legal effects of which a delinquent parent may dissipate at will by the expression of a desire for the return of the discarded child." *In re Jessica B.,* 121 N.H. at 295, 429 A.2d at 323 (quotation omitted).

If the respondent engaged in voluntary conduct that he knew, or should have known, would necessarily and inexorably lead to the loss of opportunity to see his child, then one could find that this conduct—and hence the resulting lack of contact with the child—manifested an intent on the part of the respondent to

abandon the child. The record in this case does not support such a finding. After 1989, the only specific conduct described by the petitioner as "harassment" is explained by the respondent as attempts to see his child. Accordingly, we do not consider the contact or lack of contact during the time when the respondent was legally prohibited from contacting or supporting Sheena, by means of a restraining order, as evidence of his intent to abandon her.

The chronology of the contact between Sheena and the respondent as described in this opinion certainly describes a tumultuous relationship and sporadic visitation. However, the foregoing facts, without more, do not evidence an intent to abandon.

In its order, the probate court stated that "[i]n the period between August of 1989 and August of 1990, [the petitioner] received sporadic payments and there were visits, but no overnights." Further, the order refers to the petitioner's statement that she refused all contact with the respondent in 1990 "because she feared for her and her child's safety. She also stated that [the respondent] was into drugs and alcohol and partying and was totally irresponsible." The foregoing evidence, while raising other serious issues, cannot be said to be legally sufficient to constitute abandonment beyond a reasonable doubt under RSA 170-C:5, I. Accordingly, we reverse the probate court's decree finding abandonment and need not address the respondent's remaining contention.

*Reversed.*

All concurred.