Hillsborough County Probate Court
No. 97-515

IN RE BRITTANY L.

August 30, 1999

*Law Office of Joshua L. Gordon*, of Concord (*Joshua L. Gordon* on the brief and orally), for the petitioner, Deborah C.

*Paul J. Bennett & Associates, P.C.*, of Manchester (*Laura J. Brevitz* on the brief and orally), for the respondent, Ernest L.

HORTON, J. The respondent, Ernest L., appeals an order of the Hillsborough County Probate Court (*Cloutier*, J.) terminating his parental rights over his daughter, Brittany L. We affirm.

Except for an initial period in the New Hampshire State Prison, Ernest L. has been incarcerated on a drug-related offense in various

federal penitentiaries across the country since November 1990. Brittany L. was nine months old when her father was first incarcerated and has been mostly under the care of her mother, Deborah C., since birth. In May 1996, Deborah C. filed a petition to terminate Ernest L.'s parental rights, alleging that from the time Brittany L. was born he had negligible contact with his daughter and showed no concern for her welfare. In a series of motions to the superior and probate courts that were ultimately unsuccessful, Ernest L. sought to be transported from an out-of-state prison to attend the termination hearing. Alternatively, he requested permission to participate in the hearing by telephone conference. The probate court subsequently decided to allow Ernest L. to testify by telephone.

The termination hearing was held in May 1997, with Ernest L. testifying first because of his prison's schedule of telephone availability. Limited by resources, the probate court conducted the telephone conference in three separate rooms on three telephones connected to one line. While the court and Deborah C.'s attorney each had use of a telephone, Ernest L.'s attorney and the guardian ad litem (GAL) appointed to represent Brittany L. shared a phone in the third room. Ernest L. testified on direct and cross-examination, as well as in response to questions from the court. At the conclusion of his testimony, although it is unclear from the record, communication with Ernest L. was apparently terminated, and the hearing proceeded with live witnesses. Following the hearing and submission of memoranda of law by the parties, the probate court terminated Ernest L.'s parental rights.

On appeal, Ernest L. contends that: (1) the hearing procedure violated his federal and State due process rights; (2) his absence from the hearing, either physically or by telephone, violated his federal and State constitutional right to confront witnesses; (3) there was insufficient evidence to support the probate court's decision to terminate parental rights based on abandonment; and (4) the probate court erred in refusing to admit testimony of Deborah C.'s intent to lie during the hearing.

■ First, Ernest L. argues that the telephone procedure implemented to allow his testimony violated his procedural due process rights by preventing him from participating meaningfully in the hearing. Deborah C. contends that Ernest L. failed to preserve this issue for appeal. We agree. In his notice of appeal, Ernest L. refers specifically to only one constitutional issue, his "right to confront witnesses against him" and cites no due process cases to support his position. Due process with respect to the hearing procedure is

nowhere mentioned in his notice of appeal. *See* SUP. CT. R. 16(3)(b). We therefore deem the issue waived. *See State v. Summers*, 142 N.H. 429, 434, 702 A.2d 819, 822 (1997).

Ernest L. next argues under the State and Federal Constitutions that he "was improperly deprived of his right to confront witnesses and evidence against him, by the probate court's use of a telephonic hearing."

■ The Sixth Amendment of the Federal Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Sixth Amendment is expressly limited to criminal defendants. *See In re Brock*, 499 N.W.2d 752, 756 (Mich. 1993). *See generally Coy v. Iowa*, 487 U.S. 1012, 1015-1020 (1988). An action to terminate parental rights is a civil proceeding; therefore, the Sixth Amendment confers no right of confrontation on Ernest L. in this case. *See People in Interest of C.G.*, 885 P.2d 355, 357 (Colo. Ct. App. 1994); *Matter of Adoption of J.S.P.L.*, 532 N.W.2d 653, 660 (N.D. 1995).

Under the State Constitution, "[e]very subject shall have a right . . . to meet the witnesses against him face to face." N.H. CONST. pt. I, art. 15. Whether the Confrontation Clause of Part I, Article 15 applies to civil actions has not been decided by this court, and Ernest L. does not address this question in his brief. Hence, we decline to decide that question now. *Cf. State v. Alosa*, 137 N.H. 33, 37, 623 A.2d 218, 221 (1993).

Next, Ernest L. disputes the probate court's finding beyond a reasonable doubt that he abandoned his daughter. *See* RSA 170-C:5, I (1994) (grounds for abandonment); *In re Jessie E.*, 137 N.H. 336, 339, 627 A.2d 591, 594-95 (1993) (proof beyond a reasonable doubt). The probate court ruled that Ernest L.'s "sporadic contact" was negligible and showed an intent to abandon the child. Abandonment is a factual issue to be determined by the probate court, and we will not disturb that determination "unless it is unsupported by the evidence or plainly erroneous as a matter of law." *In re Sheena B.*, 139 N.H. 179, 181, 651 A.2d 7, 9 (1994).

■ A parent abandons his or her child when the parent's conduct evinces "a settled purpose to forgo all parental duties and relinquish all parental claims to the child." *Id.* (quotation omitted). Considering the totality of the circumstances, *see In re Jessie E.*, 137 N.H. at 342, 627 A.2d at 595, the probate court may find abandonment if it determines that the parent has made "only minimal efforts to support or communicate with the child," *In re Sara S.*, 134 N.H. 590,

593, 593 A.2d 1166, 1168 (1991) (quotations omitted), or shown only a mere "flicker of interest" in the child, *id.*

During the hearing, Deborah C. testified that Ernest L. had physically abused her during her pregnancy and had spent very little time with his daughter after she was born, preferring instead to go out with his friends. She testified that while in prison, he never contributed to Brittany L.'s financial support and demonstrated no concern over his daughter's well-being on the few occasions he called Deborah C. Deborah C.'s fiance also testified that in three-and-one-half years, he knew of only five calls from Ernest L. to Deborah C., and none directed toward Brittany L. There was testimony that Ernest L. occasionally sent cards and gifts to Brittany L. on her birthday and major holidays, but it is unclear when he started doing so. Lastly, on the basis of information obtained from several visits to Brittany L.'s home and conversations with the relevant parties, the GAL recommended that Ernest L.'s parental rights be terminated. The GAL noted Ernest L.'s lack of interest in his daughter until the petition to terminate his parental rights had been filed.

■ While much of the evidence is disputed by other witnesses, including Ernest L., the evaluation of witness credibility is within the probate court's sound discretion. *See In re Angel N.*, 141 N.H. 158, 163, 679 A.2d 1136, 1139 (1996). "We accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony." *In re Estate of Washburn*, 141 N.H. 658, 659, 690 A.2d 1024, 1026 (1997). The trial court is "not compelled to believe even uncontroverted evidence." *In re Buttrick*, 134 N.H. 675, 676, 597 A.2d 73, 75 (1991) (quotation omitted). We conclude from the record before us that there is sufficient evidence to support the probate court's determination that Ernest L. abandoned his daughter under the terms of RSA 170-C:5, I.

Finally, assuming his arguments regarding hearsay and impeachment were preserved below, although the record is unclear, we reject Ernest L.'s contention that the probate court erred in refusing to allow evidence bearing on Deborah C.'s credibility. During direct examination, Ernest L.'s attorney asked David C., Deborah C.'s brother:

> Q. At any point, did [Deborah C.] make a statement to you that she didn't want [Ernest L.] up here because if [Ernest L.] was up here, she couldn't lie?
>
> A. No.

Toward the end of the proceedings, Ernest L.'s attorney offered to call his paralegal as a witness to testify that David C. disclosed to him a statement allegedly made by Deborah C. that she would be unable to lie to the court if Ernest L. were present at the hearing. The probate court denied the request.

"[T]he admissibility of evidence is committed to the sound discretion of the trial judge," and we will not disturb its ruling unless there has been an abuse of discretion. *State v. Hopkins*, 136 N.H. 272, 275, 616 A.2d 916, 918 (1992). To demonstrate abuse of discretion reversible on appeal, Ernest L. must show that the trial court's ruling "was clearly untenable or unreasonable to the prejudice of his case." *Simpkins v. Snow*, 139 N.H. 735, 741, 661 A.2d 772, 777 (1995) (quotation and brackets omitted).

As neither party raises a question concerning the applicability of the rules of evidence to these termination proceedings, for the purpose of this appeal, we assume they apply and accordingly proceed with our analysis. *But cf.* RSA 170-C:10 (1994) (allowing admission of "relevant and material information of any nature"). Because both the evidentiary rules of hearsay and impeachment are implicated by Deborah C.'s alleged statement, we address each issue in turn. Further, because the relevant New Hampshire Rules of Evidence are identical to the Federal Rules of Evidence, we will look to cases interpreting the federal rules to guide us. *See State v. Ross*, 141 N.H. 397, 400, 685 A.2d 1234, 1236 (1996); N.H. R. Ev. 607, 613(b), 801(c), (d), 803.

■ "Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted." *State v. Hennessey*, 142 N.H. 149, 159, 697 A.2d 930, 937 (1997) (quotation omitted); *see* N.H. R. Ev. 801(c). Hearsay within hearsay is inadmissible unless "each part of the combined statements conforms with an exception to the hearsay rule." N.H. R. Ev. 805. Here, Deborah C.'s alleged out-of-court statement to her brother qualifies as an admission of a party-opponent, which is not hearsay. *See* N.H. R. Ev. 801(d)(2). Admissions of a party-opponent are generally admissible for both substantive and impeachment purposes. *See United States v. Porter*, 544 F.2d 936, 938 (8th Cir. 1976). Contrary to Deborah C.'s assertion, generally any statement by a party used against it may be an admission, *see id.*, and is subject primarily to the requirements of Rule 403, *see State v. Lesnick*, 141 N.H. 121, 129-30, 677 A.2d 686, 693 (1996).

Turning to David C.'s out-of-court statement to the paralegal, we note that if it were offered through testimony of the paralegal to

prove the truth of the matter asserted — that Deborah C. disclosed to her brother an intent to lie during the hearing — it would be barred as hearsay not falling under any exception. *See* N.H. R. Ev. 803. The entire chain of hearsay within hearsay would be inadmissible.

Ernest L. argues, however, that he was entitled to present his paralegal to testify to the prior statement made by David C. to show its inconsistency with David C.'s in-court testimony. In effect, Ernest L. intended to impeach his own witness. *See* N.H. R. Ev. 607. Extrinsic evidence of a prior inconsistent statement is admissible only after the witness is given an opportunity to explain or deny the statement and the opposing party is given an opportunity to question the witness regarding the statement. N.H. R. Ev. 613(b). The rule does not apply to admissions of a party-opponent. *Id.*

Because David C. was not a party, the exception under Rule 613(b) for the admission of a party-opponent did not apply. Thus, Ernest L. could not properly offer the paralegal's testimony as extrinsic evidence of David C.'s prior statement until he had provided David C. with an opportunity to explain or deny the prior statement. Our review of the transcript shows that Ernest L. did not afford David C. any opportunity to explain or deny his prior statement to the paralegal, and therefore he could not present the paralegal's testimony to prove the prior statement. Because Ernest L. advances no other arguments to support the admission of the paralegal's testimony, we need not proceed further. We conclude that under these circumstances the probate court acted within its discretion by refusing to hear the paralegal's testimony.

Because of our disposition of the sufficiency of evidence issue, we deny Deborah C.'s motion to strike. Deborah C. additionally requests we award her reasonable attorney's fees and costs associated with this appeal under Supreme Court Rule 23. We cannot say, however, that Ernest L.'s appeal was either frivolous or in bad faith and therefore deny her request. *See* SUP. CT. R. 23.

*Affirmed.*

All concurred.