Hillsborough County Probate Court
No. 99-528

### IN RE SHANNON M.

February 7, 2001

*Law Office of Dawn E. Caradonna,* of Peterborough (*Dawn E. Caradonna* on the brief and orally), for the petitioner, Donna R.

*Cazden Law Office*, of Manchester (*Elizabeth Cazden* on the brief and orally), for the respondent, Robert M.

NADEAU, J. The petitioner, Donna R., appeals from an order of the Hillsborough County Probate Court (*Cloutier*, J.) denying her petition to terminate the parental rights of the respondent, Robert M., over their daughter, Shannon M. We reverse and remand.

The petitioner and respondent married in July 1992. Shannon was born on January 6, 1993. In July 1993, the parties filed for divorce, which became final in February 1994. Pursuant to the divorce judgment, the care, custody, and education of Shannon were committed to the petitioner, subject to the reasonable visitation rights of the respondent. The respondent was ordered to make weekly payments of $100 to the petitioner for Shannon's support. In October 1998, the petitioner sought to terminate the respondent's parental rights, alleging abandonment and failure to support, educate or care for Shannon. The probate court dismissed the petition and denied the petitioner's motion for reconsideration. This appeal followed.

The following facts either were found by the trial court or are supported by the record. The respondent psychologically and physically abused the petitioner, including choking and raping her, resulting in the issuance of several restraining orders against him. In October 1998, the respondent, smelling of alcohol, went to Shannon's school and demanded her birth certificate, precipitating the issuance of another restraining order. The petitioner's fear of the respondent and his unpredictability for violence are more than justified. He has threatened to kill himself, and threatened to harm or to kill the petitioner, her friends, and Shannon. He has used vile, demeaning and humiliating language in his communications with the petitioner.

The respondent received psychological counseling, which he terminated against the advice of his treating psychologist, for severe depression, character pathology, and blackouts that sometimes lasted for days. The respondent is an alcoholic and has been incarcerated twice, once in February 1993 for four months and again in February 1994 for eighteen months, for driving while intoxicated and failure to appear. After his last incarceration, the respondent attended four arranged visits with Shannon. His last visit prior to the filing of the petition to terminate was in November 1996, more than six months prior to the filing date.

During the marriage and after the divorce, the petitioner lived at three addresses in New York, Connecticut, and New Hampshire. The respondent was provided with the New York address, as well as telephone numbers and addresses of the petitioner's sister and mother, in order to facilitate contact. The petitioner's sister testified that the respondent sent Shannon a Thanksgiving card in 1997, a birthday card in 1998, and a letter in September 1998 via the sister's address, but that he never sent any money. The respondent testified that he also sent an Easter card in 1997, a pre-paid telephone card in December 1997, and a money order in January 1998. The petitioner arranged for a voice mail telephone message system from March 1996 to September 1998. While the respondent called hundreds of times at all hours of the day and night, the petitioner's sister testified that the calls always concerned the petitioner and were not requests to visit with Shannon.

The respondent has been frequently unemployed since his marriage in 1992. In 1994, he admitted owing child support in the amount of $5,900. The petitioner testified that the amount owed eventually rose to $14,000. The respondent admits that he made his last support payment in February or March of 1997 and that he has not paid child support for lengthy periods of time. The respondent told the petitioner on several occasions that he would give up his parental rights in return for $3,500, the cancellation of back child support, and the payment of his attorney's and private investigator's fees. His last such offer was in September 1998.

The petitioner argues that the probate court erred when it: 1) failed to find a presumption of abandonment, based upon the evidence presented; 2) failed to determine whether the respondent's voluntary behavior manifested an intent to abandon Shannon under the standard announced in *In re Sheena B.*, 139 N.H. 179 (1994); and 3) allowed the respondent to testify concerning a private investigator's report.

We understand the petitioner's first argument to be that the probate court erred in finding that the respondent rebutted the statutory presumption of his intent to abandon Shannon.

RSA 170-C:5 states in pertinent part:

> The petition may be granted where the court finds that one or more of the following conditions exist:
>
> I. The parent has abandoned the child. It shall be presumed that the parent intends to abandon the child . . . who has been left by [her] parent in the care and custody of

another without any provision for [her] support, or without communication from such parent for a period of 6 months. If in the opinion of the court the evidence indicates that such parent has made only minimal efforts to support or communicate with the child, the court may declare the child to be abandoned.

Both the petitioner and the respondent testified that the respondent had not visited with Shannon for at least six months before the petition was filed, thus triggering the statutory presumption.

"Abandonment is a factual issue to be determined by the probate court, and we will not disturb that determination unless it is unsupported by the evidence or plainly erroneous as a matter of law." *In re Brittany L.*, 144 N.H. 139, 142 (1999) (quotation omitted). "The six-month period of time during which there is no contact or support by the parent may trigger a finding of abandonment, but it does not mandate that finding." *In re Sheena B.*, 139 N.H. at 181. Instead, "[t]he parent opposing termination has the opportunity to rebut the presumption of intent to abandon by offering evidence of events that occurred before, during, and after the triggering period." *In re Jessie E.*, 137 N.H. 336, 342 (1993) (citation omitted).

"A finding of abandonment is warranted when the parent's conduct evidences a settled purpose to forego all parental duties and relinquish all parental claims to the child." *In re Sheena B.*, 139 N.H. at 181 (quotation omitted). The probate court "must consider the totality of evidence," *id.* at 183, and may find abandonment if "the parent has made only minimal efforts to support or communicate with the child, or shown only a mere flicker of interest." *In re Brittany L.*, 144 N.H. at 142-43 (citation and quotations omitted).

The probate court found beyond a reasonable doubt that the respondent is an alcoholic; that he is in arrears in his support payments; that his support obligations are paid only sporadically; that he is obsessed with the petitioner; and that she fears him and has legitimate concerns for her safety and that of Shannon.

The probate court also found that, because of the petitioner's concerns, she had "pursued a course of conduct which prevented [the respondent] from visiting with his daughter or establishing a relationship." Although finding that the respondent's conduct was "regrettable and unacceptable," the court reasoned it could not find beyond a reasonable doubt that he had not attempted "to establish a relationship with his daughter and exercise his visitation rights." Based upon the totality of evidence in the record and the standard announced in *Sheena B.*, we disagree.

The petitioner argues that the probate court failed to determine whether the respondent's voluntary behavior manifested an intent to abandon Shannon under the standard announced in *Sheena B.* In *Sheena B.*, the mother petitioned for the termination of the father's parental rights, and showed that the father had no contact with the child for two periods of six months or more. For a portion of one period, however, the father was either out of State seeking work or incarcerated. After the father's return to New Hampshire, he made child support payments and was allowed visitation with the child. Within two years, the mother refused any further child support payments and declined to permit any further visitation with the child. She twice sought restraining orders against the father, claiming harassment from his telephone calls and letters. There was evidence that the harassing calls and letters were to seek visitation and to send child support checks. *In re Sheena B.*, 139 N.H. at 181-82. In reversing the probate court's termination of the father's parental rights, we stated:

> Strictly speaking, there is no abandonment by a parent where the separation of parent and child is caused solely by the other parent or a third party and because of no fault on the part of the parent whose rights are sought to be terminated. "Fault" in this context would include the absence of efforts to reinitiate contact on the part of the parent whose rights are sought to be terminated. It would be illogical to find that the respondent demonstrated an intent to abandon [the child] when, for a significant portion of the relevant time period, he was prohibited by law from contacting her.

*Id.* at 184.

 Had the separations between the respondent and Shannon been caused solely by the actions of the petitioner and without fault on the part of the respondent, we agree that he would have rebutted the statutory presumption of his intent to abandon Shannon. In *Sheena B.*, however, we continued:

> On the other hand, we are troubled insofar as these "involuntary" separations — enforced by restraining orders or created by the petitioner's relocating without leaving a forwarding address — were in response to the respondent's prior improper conduct.
>
> . . . .

>If the respondent engaged in voluntary conduct that he knew, or should have known, would necessarily and inexorably lead to the loss of opportunity to see his child, then one could find that this conduct — and hence the resulting lack of contact with the child — manifested an intent on the part of the respondent to abandon the child.

*Id.* at 184-85. At the conclusion of the hearing on the motion for reconsideration in the instant case, the probate judge discussed his interpretation of *Sheena B.* Although he was keenly sensitive to our holding in *Sheena B.*, it is unclear from that discussion and the judge's order whether he specifically considered the above language from *Sheena B.* before dismissing the petition for termination. We, therefore, reverse and remand for a new hearing on this issue. *See In re Jessie E.*, 137 N.H. at 341.

On remand, the probate court should determine whether the respondent's behavior manifested an intent to abandon Shannon under the language of *Sheena B.*, 139 N.H. at 184-85. If the probate court finds an intent to abandon Shannon beyond a reasonable doubt, then it must proceed to consider if termination of the respondent's parental rights is in the best interest of the child. *See id.* at 180.

The respondent argues that based upon the record, neither the probate court nor this court can conclude "beyond a reasonable doubt" that terminating his relationship with his daughter would be in her best interests. We address this argument solely because it raises an issue likely to recur in a new hearing. In considering a petition to terminate parental rights, the probate court performs a two-step analysis. "First, it must find one of the statutory grounds for termination; thereafter, it must determine whether termination would be in the best interest of the child." *In re Angel N.*, 141 N.H. 158, 164 (1996). Because parental rights are fundamental under the New Hampshire Constitution, "the party seeking to terminate parental rights must prove the statutory ground for termination beyond a reasonable doubt." *In re Sheena B.*, 139 N.H. at 180 (quotation omitted).

After finding that one of the statutory grounds for termination has been proven beyond a reasonable doubt, the court must consider whether it is in the child's best interest to terminate the

parental rights of the parent in question. *Id.* at 180 (quotation omitted). The conclusion of what is in the child's best interest is not an evidentiary fact, however, and is not required to be established by the standard of "beyond a reasonable doubt." *In re Matthew G.*, 124 N.H. 414, 416 (1983). "Rather, the conclusion concerns which of the possible alternative dispositional orders is the most desirable, under a standard giving priority to the assumed interest of the child." *Id.*

Finally, the petitioner argues that the probate court erred by allowing the respondent to testify concerning a private investigator's report in violation of Rule 801 of the New Hampshire Rules of Evidence. Neither party questions the applicability of the rules of evidence to these termination proceedings. Consequently, we assume, without deciding, that the rules of evidence apply. *See In re Brittany L.*, 144 N.H. at 144.

The petitioner contends that the testimony should not have been allowed because the private investigator was not in court, thus precluding her from cross-examining the investigator to prove the report as untrustworthy and unreliable. The respondent argues that the issue was not preserved for appeal, as no hearsay objection was raised in the proceedings below. We agree.

■ "The general rule in this jurisdiction is that a contemporaneous and specific objection is required to preserve an issue for appellate review. The objection must state explicitly the specific ground of objection." *State v. Brinkman*, 136 N.H. 716, 718 (1993) (citation and quotations omitted). At oral argument, the petitioner's attorney conceded that her objection had been "inartfully phrased," but argued that the statement, "I haven't seen that the investigator is here" put the court on notice that she based her objection upon hearsay grounds. We disagree.

Accordingly, we reverse the decision of the probate court and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

DALIANIS, J., concurred; MOHL, J., superior court justice, specially assigned under RSA 490:3, concurred; DUNN, J., retired superior court justice, sat for oral argument by special assignment under RSA 490:3 but did not take part in the final vote.