### In re MICHAEL T.

### No. 2000–221–A.

Supreme Court of Rhode Island.

April 24, 2002.

Frank P. Iacono, Jr.; John E. Farley, Thomas J. Corrigan, Jr., Paula Rosin, Providence.

Catherine A. Gibran, Providence.

### ORDER

This is a mother's appeal from a decree terminating her parental rights (TPR) to her son, Michael, born on January 10, 1990. By default, the Family Court also terminated the parental rights of Michael's father, a resident of the Dominican Republic, and he has not appealed. After a prebriefing conference, a single justice of this Court ordered the parties to show cause why the issues raised in this appeal should not be summarily decided. Because they have not done so, we proceed to decide the appeal at this time.

The Department of Children, Youth and Families (DCYF or the department) filed a TPR petition alleging that both parents had abandoned or deserted Michael, that he had been in the care of DCYF for at least twelve months, and that he would not be able to return to his mother's care within a reasonable period of time. The trial justice determined that DCYF proved these allegations by clear and convincing evidence and granted the petition.

On appeal, the mother first argues that the department failed to prove that she had an intent to abandon her child. The TPR statute provides that the court can terminate parental rights if "[t]he parent has abandoned or deserted the child." G.L.1956 (2000 Reenactment) § 15–7–7(a)(4). The statute specifies: "A lack of communication or contact with the child for at least a six (6) month period shall constitute prima facie evidence of abandonment or desertion." *Id. See also In re Shanelly C.*, 785 A.2d 1129, 1131 (R.I. 2001). The TPR statute "does not include the element of willfulness to show abandonment." *In re Craig G.*, 765 A.2d 1200, 1202 (R.I.2001). Although the mother cites cases from other jurisdictions holding that, to prove abandonment, it is necessary to find a "settled purpose" on the part of the parents to abandon the child and to surrender all future parental claims to the child, *see, e.g., Black v. Gray*, 540 A.2d 431, 433 (Del.1988); *see also In re Sheena B.*,

139 N.H. 179, 651 A.2d 7, 9 (1994), in this jurisdiction willfulness is not a necessary element to prove abandonment. *See In re Craig G.*, 765 A.2d at 1202.

The mother also contends that she maintained contact with her son and "has challenged the state's actions to take her son away from her every step of the way." The trial justice, however, found that "the mother has not exercised any consistent manifestation of interest or concern to visit with the child." The mother advised DCYF on August 22, 1996 that she had moved to New York.

The mother contends that she maintained contact with Michael by visiting him six times between July 1996, and February 1997, and by calling him in May 1997, and in July 1997. She testified that she attempted to contact DCYF by phone during the period between February 1997, and December 1997, but that the DCYF caseworker assigned to her case did not return her phone calls. Yet the caseworker testified that, from the time she took the case until the time DCYF filed the termination petition, the mother never asked her about the child's health or education.

We have stated that it is the responsibility of the parent to maintain substantial and repeated contacts with a child in DCYF's care. *In re Devone S.*, 777 A.2d 1268, 1272 (R.I.2001) (per curiam). *See also In re DeKarri P.*, 787 A.2d 1170 (R.I.2001) (per curiam). In this case, the mother apparently expected DCYF to arrange for and maintain contacts between her and her son after she left this jurisdiction and moved to New York. We conclude, however, that sufficient evidence exists to support the finding of abandonment in this case because, as the trial justice found, the mother "exercised a minimum effort to see her child."

The mother next argues that DCYF did not make reasonable efforts to reunite her with her child. The department, however, need not make reasonable efforts toward reunification when it seeks a TPR decree based upon abandonment. *See* § 15-7-7(b)(1). In any event, the mother was apparently unwilling to cooperate with the services that DCYF proffered. A parent's refusal to cooperate with services may be considered in deciding whether to issue a TPR decree. *In re Jennifer*, 767 A.2d 682, 685 (R.I.2001) (per curiam). Although the DCYF caseworker assigned to the mother wrote four case plans from August 1996, to August 1998, and discussed the contents of the first case plan with the mother several times, the mother refused to sign it and did not comply with the requirements of the plan. Nor did she comply with the goals of the second, third, or fourth case plans. Thus, the mother's failure to cooperate with these plans and proffered services impeded DCYF's efforts at reunification.

The mother also argues that DCYF failed to keep her informed of her son's health and welfare. But a parent whose child is in DCYF care is required to: (1) maintain substantial contacts with the child, and (2) plan for the child's future. *In re Armand*, 433 A.2d 957, 961 (R.I. 1981). The mother attempts to place responsibility on the department for maintaining contact with her child and keeping her informed of the child's progress. The evidence showed, however, that the mother seldom attempted to contact DCYF and never inquired about her son's health or education.

The mother's final issue on this appeal concerns the trial justice's alleged lack of impartiality. A party alleging that the trial justice was biased carries a substantial burden of proof; he or she must show that the asserted prejudice impaired the fairness of the trial. *State v. Nidever*, 120 R.I. 767, 390 A.2d 368, 370 (1978). In

order to prove such prejudice, it is necessary to establish that irrelevant facts and events affected the actions and decisions of the trial justice. *Id.* We are of the opinion that the mother failed to sustain her heavy burden in this case. The trial justice's comment that the mother could remember some facts but not others was based upon his observation of her testimony. He indicated that he was not questioning her veracity and that he remained open-minded about the case. The questions he posed to the mother concerning the translation of one of her answers does not suggest prejudice on the part of the trial justice. The trial justice pointed out that, as the trier of fact, he needed to understand the evidence and to give the witness an opportunity to explain. In doing so, he did not show bias or prejudice against the mother's case.

The findings of the trial justice in a TPR case are entitled to great weight and will not be disturbed on appeal unless they are clearly wrong or unless the trial justice overlooked or misconceived material evidence. *In re Jennifer,* 767 A.2d 682, 684 (R.I.2001). Here, the record supports the findings of the trial justice. Therefore, we deny the mother's appeal and affirm the Family Court's TPR decree.