**In re DANESHA J.**

**No. 2004–348–Appeal.**

Supreme Court of Rhode Island.

Jan. 19, 2006.

Paula Lynch, East Greenwich.

Karen A. Clark, Providence, Frank P. Iacono, Jr.

**ORDER**

This is an appeal from a Family Court order terminating the parental rights of the respondent-father, Jerome Terry (respondent). On appeal, the respondent asks this Court to vacate the order terminating his parental rights.

On April 11, 2003, Danesha J., age twelve, was placed in the temporary custody of the Department of Children, Youth and Families (DCYF), pursuant to an order of the Family Court. On September 11, 2003, respondent admitted to neglect, and Danesha was committed to the care of DCYF. On April 14, 2004, DCYF filed a petition to terminate respondent's parental rights.

A hearing on the termination of parental rights petition was held in Family Court on June 24, 2004. During that hearing, the child's mother, Karron J., agreed to execute a direct consent adoption petition whereby Danesha would be adopted by her foster parents. At the conclusion of the hearing, the hearing justice terminated the father's parental rights, basing his decision in part on the allegation that respondent had abandoned and deserted Danesha, as those terms are defined in G.L.1956 § 15–

7–7(a)(4). A final decree was entered on June 29, 2004, and respondent timely filed a notice of appeal.

DCYF was first assigned to this family in January 2003 and first began meeting with the family in March 2003.[1] At or around that time, respondent was incarcerated at the Adult Correctional Institutions pursuant to a conviction for possession of cocaine and marijuana. Danesha had been living with her paternal grandmother; but she had to be removed from that home because her aunt, who was also living there, was involved with DCYF. Upon her removal from the home, Danesha, together with a half-sister, was placed in the foster home in which she currently resides.[2] The DCYF caseworker assigned to this case admitted that she made no attempt to contact respondent until September 2003. After contacting respondent, the caseworker met with him and established a case plan, which included an agreement that DCYF would provide weekly unsupervised visits between respondent and Danesha. The first visit occurred in September 2003. At the second visit, respondent took Danesha to visit her half siblings. Once there, however, he engaged in a physical altercation with the mother of those children, as a result of which he was again incarcerated until December 2003. The respondent advised DCYF that he preferred not to continue visits with Danesha while he was incarcerated. Although respondent claimed at the hearing that he had written letters to Danesha while incarcerated, he was not specific about the contents of any letter nor did he testify as to their content. In addition, no evidence of letters was produced at the hearing.

---

**1.** The caseworker assigned to the family testified at the termination hearing that the case first came to the attention of DYCF after certain incidents of substance abuse involving Danesha's mother were reported.

**2.** Danesha's sister was adopted by the foster family on September 7, 2004.

After respondent's release from prison in December 2003, another agreement came into existence providing for weekly visitation. In spite of that agreement, the caseworker testified that she was aware of only three visits from December 2003 until the date of the termination hearing. The caseworker testified that respondent told her that he did not want to be a distraction while Danesha was involved in her many activities, and he told Danesha to contact him when she was ready to visit.[3]

Section 15–7–7(a)(4) requires the Family Court to terminate an individual's parental rights if it finds that "[t]he parent has abandoned or deserted the child." It further provides that "[a] lack of communication or contact with the child for at least a six (6) month period shall constitute prima facie evidence of abandonment or desertion." *Id.* The lack of visits or contact need not be total; rather, as this Court has held, the parent has an affirmative obligation to maintain substantial and repeated contact with the child, and he or she must demonstrate consistent interest in or concern for the child. *E.g., In re Diamond I.*, 797 A.2d 1076, 1078 (R.I.2002) (mem.); *In re Michael T.*, 796 A.2d 473, 474 (R.I.2002) (mem.); *In re Devone S.*, 777 A.2d 1268, 1272 (R.I.2001).

After reviewing the evidence, the hearing justice implicitly found that DCYF had established its allegation of abandonment by clear and convincing evidence. Specifically, the hearing justice found that in the seven-month period between December 2003 and June 2004, the respondent saw his daughter on only three occasions. Importantly, in spite of the visitation agreement implemented by DCYF, the respondent chose to shift the burden of initiating visitation from himself to twelve-year-old Danesha.

Our review of the record indicates that there is legally competent evidence to support the hearing justice's findings. *See In re Unique T.*, 822 A.2d 182, 183 (R.I.2003). Accordingly, the Family Court's entry of a decree terminating the respondent's parental rights is affirmed. The papers in this case may be remanded to the Family Court.

---

**3.** The hearing justice conducted an in camera interview of Danesha, during which she said that her foster parents rated a ten on a scale of one to ten and that she thought she should stay with them for adoption while remaining free to visit her father on the weekends.