<hr />

9th Circuit Court — Manchester Family Division
No. 2013-368

IN RE DEVEN O.

Submitted: September 19, 2013
Opinion Issued: November 7, 2013

*Mosca Law Office*, of Manchester (*Edward C. Mosca* on the memorandum of law), for the petitioner.

*Law Office of John J. A. Schrepfer, PLLC*, of Manchester (*John J. A. Schrepfer* on the brief), for the respondent.

LYNN, J. The respondent, the father of Deven O. (father), appeals an order of the 9th Circuit Court — Manchester Family Division (*Carbon*, J.) terminating his parental rights over Deven (child) on the grounds of abandonment and failure to support. *See* RSA 170-C:5, I, II (2002). We reverse.

I

The trial court found, or the record supports, the following facts. Deven was born on June 18, 2006, and lived with his parents until December 2006, when they ended their relationship and the father moved out. Deven and his father had sporadic contact in 2007, spending time together a few days per month. In December 2007, the father was arrested for armed robbery and subsequently was incarcerated until June 2010. The mother visited the father in prison on a number of occasions, but she brought Deven on only one or two of these visits. The father was released from a half-way house in June 2010 and, during the next three months, visited with Deven a few times each week. The father took numerous photos of Deven and posted comments about the visits on his Facebook page. In September 2010, the

parents had a long telephone conversation during which the mother told the father that she did not want him visiting with Deven until the father "straighten[ed] out" his life.

Thereafter the father's contact with Deven decreased because, as the court found, the mother made it difficult for him to contact his son. Between September 2010 and March 2011, the father called the mother at least once about giving Deven a Christmas gift. In October 2010, the mother filed a petition to change Deven's surname to her own. Although she knew that the father was no longer incarcerated, she listed his last known address as the state prison. As a result, the father did not receive notice of the petition and did not learn that Deven's name had been changed until December, when the mother posted this information online.

Beginning in March 2011, the father made several attempts to contact the mother to arrange parenting time with Deven. He also contacted the mother's father to elicit his help in arranging visits. When these efforts failed, the father filed a parenting petition in December 2011. He also proposed a parenting plan and a visitation schedule with Deven. The mother responded in January 2012 by filing a petition to terminate the father's parental rights on the grounds of abandonment and failure to support. The parenting petition was temporarily stayed pending the outcome of the termination proceeding.

Following a two-day hearing, and notwithstanding the guardian ad litem's contrary recommendation, the trial court terminated the father's parental rights. The court found that the father had abandoned and failed to support Deven. See RSA 170-C:5, I, II. The court also found that termination of the father's parental rights was in Deven's best interest. The court noted that, after their separation, both the father and the mother had established new relationships, and found that their respective new partners "have had a very positive impact on the parents' lives." The court also found that the mother's new partner had become a father figure for Deven, had welcomed Deven into his extended family, and had provided financial, emotional, and other support for the child.

In a motion for reconsideration the father asserted that he had no legal obligation to support Deven because he neither was listed as the father on Deven's birth certificate nor had been ordered by a court to pay support. In denying the motion for reconsideration, the court stated:

> While [the father's support argument] presents an interesting issue, it is one the Court need not address, as the Court is required to find only one legal grounds for termination, and in this case, the Court reaffirms that Father has abandoned the child

within the meaning of RSA 170-C:5 . . . . The Court reaffirms its finding that Father abandoned the child and denies his request to reconsider this element.

This appeal followed.

## II

■ A court may not order the termination of parental rights unless the petitioning party proves a statutory ground for termination beyond a reasonable doubt. *In re Haley K.*, 163 N.H. 247, 249 (2012); *see* RSA 170-C:5 (2002 & Supp. 2012); RSA 490-D:2, VII (2010) (authorizing family division to exercise jurisdiction over termination of parental rights cases under RSA chapter 170-C). Under RSA 170-C:5, abandonment and failure to support are among the grounds upon which a court may terminate parental rights. RSA 170-C:5, I (abandonment), II (failure to support). The father contends that the evidence was insufficient to support termination of his parental rights on either ground.

## A

■ We first consider whether the evidence supports a finding of abandonment. A parent is presumed to have intended to abandon a child when the parent has left the child in the care and custody of another without any provision for the child's support or without communicating with the child for a period of six months. RSA 170-C:5, I. Although the statute does not provide a comprehensive definition of abandonment, we have held that a parent abandons a child when the parent's conduct evidences a settled purpose to forego all parental duties and relinquish all parental claims to the child. *In re Shannon M.*, 146 N.H. 22, 25 (2001). The trial court must consider the totality of the evidence, and may find abandonment if the parent has made only minimal efforts to support or communicate with the child, or shown only a mere "flicker of interest" in the child. *Id.*

■ The six-month period of time during which there is no contact or support by the parent may trigger the statutory presumption of intent to abandon, but it does not mandate a finding of abandonment. *Id.* at 25. Instead, the parent opposing termination has the opportunity to rebut the presumption of intent to abandon by offering evidence of events that occurred before, during, and after the triggering period. *Id.* Abandonment is a factual issue to be determined by the trial court, and we will not disturb that determination unless it is unsupported by the evidence or plainly erroneous as a matter of law. *Id.* at 25; *In re Jack L.*, 161 N.H. 611, 614 (2011).

■ Although the trial court's order stated that there were multiple periods in excess of six months during which the father had little or no contact with Deven,[*] the court focused upon the period from September 2010 through March 2011. The father argues that he made various efforts to see Deven during this period that are not reflected in the trial court's order. These include, among other things, going to the mother's house, making arrangements to attend Deven's karate class, and sending seven Facebook messages to the mother. The trial court, as the trier of fact, is in the best position to assess and weigh the evidence before it. *In re Adam R.*, 159 N.H. 788, 792 (2010). It has the benefit of observing the parties and their witnesses, and its discretion necessarily extends to assessing the credibility and demeanor of those witnesses. *Id.*; *In the Matter of Kurowski & Kurowski*, 161 N.H. 578, 585 (2011). Conflicts in testimony, questions about the credibility of witnesses, and the weight assigned to testimony are matters for the trial court to resolve. *Kurowski*, 161 N.H. at 585. We defer to the trial court's decision not to credit the father's testimony regarding his efforts to see Deven. Thus, based upon the record, we conclude that the evidence was sufficient to trigger the presumption of abandonment. *See In re Jessie E.*, 137 N.H. 336, 342 (1993).

■ However, the finding of no communication for a period of at least six months is only the first step in the analysis of whether there has been abandonment under RSA 170-C:5, I. *Id.* The trial court must then consider the totality of the evidence to determine whether the presumption of intent to abandon has been rebutted. *Id.* In making this determination, the court should consider, among other things, "the frequency and quality of the communication between the parent and child, the emotional and financial support provided by the parent for the child, and whether the overall

---

[*] In its final order, the trial court stated:

> [T]here have been multiple periods in excess of six months where [the father] has had limited or no contact with Deven, nor provided any support. With the exception of a few short visits, for the entire 2.5 year period that he was incarcerated, he was unable to see Deven, and conceded that would not have been in Deven's best interest. While he made efforts to see Deven for three months upon his release in the summer of 2010, his efforts *thereafter* were, in the Court's view, too little and too late. Contact subsided following the September 2010 telephone conversation. For a six month period from October 2010 to March 2011, there was no contact save a Christmas gift, and then again throughout most of 2011. [The father] made sporadic telephone calls to [the mother], but could easily have filed a Parenting Petition in the fall of 2010, rather than waiting fourteen months to do so.

(Emphasis added). We interpret this statement as the trial court's finding that the six month period after September 2010 was the earliest period when the father's lack of contact triggered the statutory presumption of abandonment. We note that, on appeal, the mother does not contend that the triggering period occurred any earlier than September 2010.

conduct of the parent evidences a willingness to take on responsibility and concern for the child's physical and emotional care and well-being." *In re Sabrina C.*, 137 N.H. 445, 448 (1993) (quotation omitted).

■ Based upon the record before us, we hold that the presumption was rebutted. The record shows that the father made efforts to communicate with Deven both before and after the triggering period. Before the triggering period the father visited with Deven multiple times per week, for three months. These visits are sufficient to show that the father's conduct during this time was more than minimal and evidenced a concern for Deven's physical and emotional care and well-being. Indeed, the trial court found that the father enjoyed these visits with Deven; he took pictures of the child and posted Facebook messages about the visits. The father also made an effort to communicate with Deven after the triggering period. He repeatedly called or sent Facebook messages to the mother in an attempt to arrange parenting time with Deven, and also called or text-messaged the mother's father to solicit his help in seeing Deven. When these efforts to see Deven failed, the father filed a parenting petition requesting visitation time with Deven.

In finding abandonment, the trial court faulted the father for not instituting a parenting petition for more than a year after the mother told him that he could not visit with Deven and, thereafter, made it difficult for him to do so. Although the mother implied that she took these measures out of concern for Deven, the trial court made no finding that the mother's actions were justified or that the father posed any danger or risk to the child. On the contrary, the court described the mother's behavior in impeding the father's efforts to see Deven as "not commendable."

■ We find *In re Sheena B.*, 139 N.H. 179 (1994), instructive. In that case we reversed a finding of abandonment when the mother had denied the father contact with the child for a period of twenty-eight months before he sought court relief to enforce his parental rights. *In re Sheena B.*, 139 N.H. at 180. In reaching this decision, we explained:

> Strictly speaking, there is no abandonment by a parent where the separation of parent and child is caused solely by the other parent or a third party and because of no fault on the part of the parent whose rights are sought to be terminated. "Fault" in this context would include the absence of efforts to reinitiate contact on the part of the parent whose rights are sought to be terminated.

*Id.* at 184. We emphasized that, "[i]f the respondent engaged in voluntary conduct that he knew, or should have known, would necessarily and

inexorably lead to the loss of opportunity to see his child, then one could find that this conduct . . . manifested an intent on the part of the respondent to abandon the child." *Id.* at 184-85.

Although in *Sheena B.* the mother had obtained restraining orders that prevented the father from having contact with the mother or child, the absence of such orders in this case does not call for a different result. As *Sheena B.* shows, the restraining orders in that case were in effect for only a few of the twenty-eight months during which the mother denied the father contact with the child. *Id.* at 182-83. Moreover, the existence of the restraining orders in *Sheena B.* did not preclude the father from filing a parenting petition at any time during the twenty-eight month period.

■ Here, given the evidence of his repeated efforts to gain access to Deven through the mother and the mother's father, we conclude, as we did in *Sheena B.*, that any tardiness on the part of the father in invoking legal measures to gain contact with his child is insufficient to support a finding of a settled purpose to abandon the child. We reiterate that parental rights are "natural, essential, and inherent" within the meaning of Part I, Article 2 of the New Hampshire Constitution. *In re Jack L.*, 161 N.H. at 614 (quotation omitted). The fundamental liberty interest of biological and adoptive parents in the care, custody, and management of their children does not evaporate simply because they have not been model parents. *In the Matter of Jeffrey G. & Janette P.*, 153 N.H. 200, 204 (2006). Therefore, even though their parenting skills may be less than ideal, biological and adoptive parents are presumed to be fit parents until they are found to be unfit under either RSA chapter 169-C (abuse and neglect proceedings) or RSA chapter 170-C (termination of parental rights). *Id.* Here, the mother failed to sustain the heavy burden of proof that the statute mandates. *In re Shannon M.*, 146 N.H. at 25.

## B

The father next argues that the evidence was insufficient to show, beyond a reasonable doubt, that he had the financial ability to support Deven. Therefore, he contends, his failure to do so did not justify termination of his parental rights. Preliminarily we note that the trial court, when it denied the father's motion for reconsideration, stated that it needed to find only a single ground for termination and reaffirmed its finding of abandonment. Although this could indicate that the court withdrew its finding of nonsupport as an alternative ground for termination, because the parties have not interpreted the order that way, we proceed to examine whether the evidence was sufficient to support a finding of nonsupport.

■ The trial court may terminate parental rights on the grounds of failure to support when, "although the parents are *financially able*, they have substantially and continuously neglected to provide the child with necessary subsistence, education or other care necessary for his mental, emotional, or physical health or have substantially and continuously neglected to pay for such subsistence, education or other care when legal custody is lodged with others." RSA 170-C:5, II (emphasis added). Thus, in order for the trial court to terminate the father's parental rights under this section, the mother had to prove, beyond a reasonable doubt, that the father was "financially able," but had nonetheless substantially and continuously neglected to support Deven. *See* RSA 170-C:5, II; *In re Sophia-Marie H.*, 165 N.H. 332, 336 (2013). We will not disturb a trial court's finding that a ground for termination has been proved unless it is unsupported by the evidence or plainly erroneous as a matter of law. *In re Jack L.*, 161 N.H. at 614.

■ The statute does not define, and we have not addressed, what it means to be "financially able" in this context, and we need not do so here. There was no evidence that the father was financially able to support Deven, nor was there evidence that he was trying to avoid paying support. *Compare In the Matter of Muller & Muller*, 164 N.H. 512, 521-22 (2013) (upholding finding of voluntary unemployment in divorce case where circumstances of parent's job loss were suspect and he had well-documented history of using failure to pay child support as weapon against other parent). The trial court found that the father had never been self-sufficient or held full-time employment at any time during Deven's life. Although the father has purchased Christmas and birthday gifts for Deven, and on one occasion offered to pay child support — an offer declined by the mother — the father has not actually provided support for Deven at any time during the child's life. The court attributed the father's inability to become self-sufficient to a combination of his lack of job skills and his criminal history. *See* RSA 170-C:5, VI (2002) (providing that "[i]ncarceration in and of itself shall not be grounds for termination of parental rights"); *cf. In the Matter of Sarvela & Sarvela*, 154 N.H. 426, 436 (2006) (in divorce cases, parent's loss of job because of his own wrongdoing does not constitute voluntary underemployment). And although the court expressed some consternation about the father's decision to leave a part-time job to be with his new partner and his attempt to start an exotic reptile business, the record contains insufficient evidence to show that, in the absence of those decisions, the father would have been able to support Deven. *See In re Sophia-Marie H.*, 165 N.H. at 337 ("The mere fact that the father had sporadic employment does not establish, beyond a reasonable doubt, his

ability to provide for [the child].”). We hold that, as a matter of law, the evidence was insufficient to prove beyond a reasonable doubt that the father, although financially able, failed to support Deven.

## III

In light of our holdings above that the mother failed to prove a statutory ground for termination of the father's parental rights, we need not address whether the court erred in finding that termination was in Deven's best interest.

*Reversed.*

DALIANIS, C.J., and HICKS, CONBOY and BASSETT, JJ., concurred.